### BOONE v. THE STATE.

</div>

1. On the trial of one charged with murder the defendants's motive for the
   homicide is always relevant.  The testimony relating to the defendant's
   motive, to which objection was made, was properly received.
2. Where the weapon used to kill the decedent was a rock, which was
   introduced in evidence but not described in the· brief of evidence, this
   court can not say that the evidence did not warrant the following
   charge:   "You can consider whether or not the rock was a weapon
   likely to produce death in the way the evidence disclosed that it was
   handled by the defendant, if the evidence does show it.  If, gentlemen,
   you should conclude from the facts in this case that the defendant
   killed the deceased with a rock, and that the rock was a weapon likely
   to produce death in the hands of the defendant in the way and manner
   the defendant used it, then, gentlemen, the law would presume an in-
   tention to kill."
3. The evidence did not authorize a charge on voluntary manslaughter.
4. The verdict is supported by the evidence.

<div align="center">

APRIL 11, 1916.

</div>

Indictment for murder.   Before Judge Freeman.   Carroll supe-
rior court.   December 31, 1915.

*Smith, Reese & Smith,* for plaintiff in error.

*Clifford Walker, attorney-general, J. R. Terrell, solicitor-general, S. Holderness,* and *Mark Bolding,* contra.

EVANS, P. J.   Will Boone was convicted of the murder of Wyley Springer, and recommended to mercy.   It appeared from the evidence submitted by the State that the father of the decedent owned a farm, part of which was controlled by the decedent, with whom the defendant worked as a share cropper.   The decedent had contracted with a merchant in the vicinity to make certain advances upon his credit to the defendant during the year.   A day before the homicide, at the instance of the decedent the defendant carried a bale of cotton and some cottonseed to the merchant who had made to him advances during the year.   The merchant bought the cotton and cottonseed, but paid the defendant only for the cottonseed, stating that his landlord, the decedent, had directed him to apply the proceeds of the cotton to the account.   Whereupon the defendant became very angry and threw down the money which the merchant had paid him, exclaiming, "If I can't get what I want, I won't have none," and that he was going back home and settle with the decedent.   Early on the morning of the next day after this occurrence the decedent went to the house of a tenant of his father, for the purpose of giving certain directions with reference to the marketing of a bale of cotton.   The defendant lived with this tenant, but was not at the house at the time the decedent arrived.   Shortly afterwards he came in and inquired of the decedent if he had that twenty dollars he told him to get Friday night.   The decedent replied that he did not have it.   Whereupon the defendant said, "I told you last night you had to get me twenty dollars up this morning, and you could take the crop and get it out," and ran his hand in his pocket and pulled out a knife and started towards the decedent.   The tenant stepped between them and told the defendant to get out of the house, that he should not have any fuss there.   The defendant then reached up and procured a gun that was on the rack over the door, and unbreached it. The tenant inquired of him what he was going to do with that gun, and the defendant said, "I am going to kill him, God damn him.   I told him to get me up twenty dollars this morning, and he didn't do it, and I am going to kill him."   The decedent then picked up an ax which was lying near, saying "I ain't up for having any fuss."   The defendant then threw the gun upon the foot

of the bed, and went out of the house.   The decedent laid down the
ax, and walked across the room towards the door.   After the defendant left the house he procured two rocks, one of which he
threw at the decedent as he came to the door, hitting him on the
side of the head, felling him, and inflicting a mortal wound.   After
inflicting the blow the defendant ran off.

1.   Objection was made to the testimony of the merchant as to
the occurrence at his store on the night preceding the day of the
homicide.   His testimony tended to show that the motive of the
homicide was the defendant's anger towards the landlord, because
the landlord had directed the merchant to apply the proceeds of
the cotton to their account instead of paying the money to the
defendant.   On the trial of one charged with murder, evidence of
the defendant's motive for the homicide is always relevant.

2.   The court charged: "You can consider whether or not
the rock was a weapon likely to produce death in the way the evidence disclosed that it was handled by the defendant, if the evidence does show it.   If, gentlemen, you should conclude from the
facts in this case that the defendant killed the deceased with a
rock, and that the rock was a weapon likely to produce death in
the hands of the defendant in the way and manner the defendant
used it, then, gentlemen, the law would presume an intention to
kill."   The criticism upon this charge is, that there was no evidence to authorize it.   It is argued that the brief of evidence does
not disclose the size, weight, or character of the rock.   It does appear, however, that the rock was identified and introduced in evidence on the trial of the case.   It was in the power of the defendant, in preparing his motion for new trial, to have given a description of the rock, and the failure of the record to describe the
rock which was introduced in evidence is attributable to him.   He
who alleges error must show error; and, in the absence of anything
to the contrary, we can not say that the evidence relating to the
rock as a deadly weapon was not sufficient to authorize the charge.

3.   According to the evidence the killing was unprovoked.   A
fair summary of it is contained in the foregoing statement of
facts.   This testimony did not authorize a charge on the law of
voluntary manslaughter.

4.   The evidence was sufficient to authorize the verdict.

*Judgment affirmed.   All the Justices concur.*