19259.   REID *v.* THE STATE.

DECIDED DECEMBER 11, 1928.

*Hallie B. Bell, Julian F. Urquhart,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

LUKE, J.   C. F. Reid was convicted of assault with intent to murder James O. Walker, and, his motion for a new trial being overruled, he brought the case to this court for review.

The contention of the State is that on the afternoon of March 3, 1928, some young white men and some negroes were engaged in a fight when the prosecutor in this case came up, but refused to take part in the difficulty, and, after watching the fight for a short time, went on to town. The white men engaged in the afternoon fight, incensed because Walker would not help them fight the

negroes, went to Macon and informed the defendant C. F. Reid and other friends that Walker had assisted the negroes in the fight during the afternoon. Reid armed himself with a pump-gun, and, together with several other men, started in automobiles to the place where Walker resided with his brother, for the purpose of killing the prosecutor. They parked their cars about 200 yards from the prosecutor's home, and, while they were so parked, the prosecutor's brother, Russ Walker, drove by in his car. Reid stopped him and told him that he intended to kill his brother, the prosecutor, and tried to prevent Russ Walker from going to the house, but he drove on anyway. The defendant and his associates then proceeded towards Walker's house. The prosecutor heard them coming and endeavored to conceal himself in the grass. As the conspirators approached, the defendant was heard to say: "A man who will do that trick, I am going to kill him. I will die and go to hell to-night or kill him, one." When it became apparent to the prosecutor that the conspirators were approaching the house along a course which would cause them to walk directly upon him as he lay concealed in the grass, he got up and ran, and, as he ran, at least two of the conspirators began firing pump-guns at him, and one of them was the defendant. A great many shots were fired, but only two took effect, one in the hip and one below the shoulder-blade, which ranged diagonally across the chest, perforated the right lung, and lodged in the wall of the chest. The doctor's testimony showed that Walker was shot in the back "just below the left shoulder-blade, and the X-ray showed later the bullet lodged between the seventh and eighth ribs in the front part of the chest." The doctor testified also that "the instrument seemed to be a pistol-ball or buckshot, because it was larger than an ordinary shot used in a shotgun." In the contentions of the defendant he made no explanation of why he carried with him to the scene of the shooting a pump-gun loaded with buckshot. The sheriff testified that when he saw the defendant that night after the shooting the defendant "was drinking pretty noticeably."

Reid admitted that he shot at the prosecutor, and admitted that with a pump-gun in his hand he told the prosecutor's brother, as he started to drive by, to "wait a minute," but his contention was that one Green had been cut by one of the negroes during the fracas in the afternoon; that Green was at the hospital, and had

left his truck at or near the place where the shooting that night took place; that he (Reid) and his associates went out there to get Green's truck; that when Russ Walker drove by that, Jim Walker, the prosecutor, stepped out of some bushes and asked Russ to get out of his car, get his gun, and said, "We will kill the whole God damned bunch;" that Jim Walker shot at the defendant three or four times, and when he did, the defendant returned the fire and came to town.

To state the contentions as set out in the foregoing statement of facts is to state in substance the evidence of the respective parties. Where the evidence is conflicting its credibility is for the jury, and we can not invade the province of the jury. This evidence, the interest of the witnesses, and all the circumstances surrounding the case amply authorized the jury to conclude that the defendant and others, while under the influence of liquor, went out to kill the prosecutor, Walker, because they believed that he helped the negroes in a fight that afternoon with white men. The fact that the prosecutor was shot in the back is a strong circumstance supporting the theory of the State that he was running from the defendants, rather than facing them and shooting at them. No gun or pistol of the prosecutor was ever found, so far as the record shows. The defendant failed to explain why he carried a pumpgun loaded with buckshot on such a friendly mission as he contended he was engaged in. Turner, Bass, McConnell, Cook, and Homer Reid, witnesses for the defendant C. F. Reid, were all in the party with Reid at the time he shot Walker, and consequently might reasonably be presumed to be interested in his behalf. Green, another witness for the defendant, was the one who was cut by a negro during the fight in the afternoon when Walker refused to help fight the negroes. Some of the parties who were in the fight with the negroes during the afternoon, or at least present, were also with Reid when he shot Walker that night, which also tends to support the State's contention.

The first special ground of the motion for a new trial complains of the following testimony by Russ Walker: "I told my brother, after I saw he was shot, that he would have to go to the hospital, and he said he was afraid to go back by there, and he said they were all drinking and I better not carry him back by there, and I knew it was either to carry him or he would die, and when I got

where they were they had done left, and I passed them about a half a mile up the road coming to town." This testimony was objected to on the ground that the defendant was not present, and that it took place too late to be part of the res gestæ. The admission of this testimony will not require a new trial. In the first place, we can not say that it was not a part of the res gestæ. While the exact time of the conversation is not shown, the circumstances do show that it took place within a few minutes after the shooting and while the prosecutor was fleeing to save his life. See *Walker* v. *State,* 137 *Ga.* 398 (3) (73 S. E. 368). Furthermore, part of this evidence.was unquestionably admissible, and the evidence was objected to en bloc. See *Barnard* v. *State,* 119 *Ga.* 436 (3) (46 S. E. 644). Furthermore, the alleged objectionable part of the testimony showed that the prosecutor was afraid to go back where the defendants were, and this is undisputed. Furthermore, when this evidence was objected to, the court replied, "I will let it in for the present;" and, so far as the record shows, no further objection to this evidence was offered. "Where the court, over objection, admits certain evidence, with the statement that the objection will be passed upon at a later stage of the trial, it is incumbent upon the objecting party, if the evidence be inadmissible, to direct the court's attention thereto either before or at the close of the testimony, and to move to exclude it; and upon his failure to do this he will be.held to have waived his objection." *Cawthon* v. *State,* 119 *Ga.* 396 (7) (46 S. E. 898). See also *Hix* v. *Gulley,* 124 *Ga.* 547 (1) (52 S. E. 890).

The 2d special ground of the motion alleges that the court erred in refusing to permit a witness for the defendant to testify: "I did not see Walker shoot at Reid. I saw him with a gun." This ground shows that the time that the prosecutor had the gun was a month previous to the shooting in the instant case; and since the witness stated that he did not see Walker shoot at Reid, the refusal of the court to permit the defendant to prove merely that Walker had a gun a month prior to the difficulty under consideration was not harmful to the accused.

The 3d, 4th, and 5th special grounds of the motion allege error because the court admitted testimony as to the fight that occurred during that afternoon between the negroes and the young white men. This evidence was admissible to show motive. The State

contended that it was the failure of the prosecutor to engage in this fight that caused the defendant to try to kill the prosecutor. Furthermore, reference to the defendant's statement shows that the defendant himself referred to this fight in his statement. Evidence of the defendant's motive in a case of assault with intent to murder is always relevant. *Boone* v. *State*, 145 *Ga.* 37 (1), 39 (88 S. E. 558).

The failure of the court to charge the law of voluntary manslaughter, as alleged in the 6th ground of the motion, will not require a new trial. Under the evidence, the defendant either shot the prosecutor with intent to kill and without justification, or shot him without intent to kill and without justification, or shot him in self-defense after the prosecutor shot at him. The charge in its entirety was fair to the accused.

The charge complained of in ground 7 when considered in connection with the remainder of the charge of the court is not erroneous. The court charged fully on the burden of proof, and that the jury should be satisfied of the defendant's guilt beyond a reasonable doubt, before they could convict; and the charge clearly showed the distinction between assault with intent to murder, shooting at another, and justifiable homicide.

Grounds 8, 9, and 10 deal with the court's failure to charge the jury with reference to their right to recommend that the accused be punished as for a misdemeanor. The record discloses that the court omitted to charge this principle of law until after the verdict had been published; but the record discloses also that the jury rendered a verdict of guilty and fixed the punishment at a minimum and maximum of five years, and after the verdict was read in court, but before the jury was discharged, the trial judge charged the jury as to their right to recommend that the accused be punished as for a misdemeanor, and they retired, and, after considering the matter again, returned the same verdict. To have failed to charge this principle of law would have been reversible error; and to charge it after the verdict was published was error, and under different circumstances could have been reversible error. However, this law deals only with the punishment of the accused, and not with his guilt, and the jury had already found him guilty, and this irregularity in charging the jury tended to help rather than harm the accused. When a jury returns a verdict of guilty

without recommendation, and the judge tells them that they can recommend, and sends them back to their room to reconsider, their natural impression will be that the judge thinks they should recommend. The jury in this case had full opportunity to recommend that the accused be punished as for a misdemeanor, and the defendant was not harmed by this irregularity. The decisions that harmless error in a charge will not require a new trial are numerous. See, in this connection, *Geter* v. *State*, 22 *Ga. App.* 264 (95 S. E. 877); *Nalley* v. *State*, 11 *Ga. App.* 15 (3) (74 S. E. 567).

The evidence authorized the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed.* *Broyles, C. J., and Bloodworth, J., concur.*