## S07A1220. LINDSEY v. THE STATE.
### (651 SE2d 66)

THOMPSON, Justice.

Lorenzo Dexter Lindsey was convicted of malice murder and criminal solicitation in the fatal shooting of Marcus Taylor.[1] Because we find that the trial court committed error in allowing the prosecution to inform the jury of Lindsey's extensive misdemeanor arrest history, and because we do not deem the error to be harmless, we reverse and grant a new trial.

Viewed in a light most favorable to the verdict, the evidence showed that co-defendant John Vincson Lawton, Jr. approached Taylor in the parking lot of a Citgo store where he fatally shot Taylor and then fled the scene. Lawton's conviction was affirmed on appeal to this Court. *Lawton v. State*, 281 Ga. 459 (640 SE2d 14) (2007).

The evidence established that Lindsey previously had been prosecuted for the murder of 83-year-old Rosa Barnes in a drive-by shooting. Taylor testified against Lindsey in that case, which resulted in Lindsey's conviction. Lindsey's conviction was reversed on appeal to this Court, *Lindsey v. State*, 271 Ga. 657 (522 SE2d 459) (1999), and on retrial, he was acquitted of the shooting. Nonetheless, while

---

[1] The crimes were committed on August 11, 2002. On August 20, 2003, a Richmond County grand jury indicted Lindsey, along with co-defendants John Vincson Lawton, Jr., Charles Hernell Hankerson, and William Rodriquez Abrams for the malice murder of Marcus Taylor. Lindsey was also charged with criminal solicitation to commit murder. An order of nolle prosequi was entered on the charge against Abrams, and Hankerson pled guilty to a lesser offense and testified at a joint trial against Lindsey and Lawton. Trial against Lindsey and Lawton commenced on December 15, 2003, and both defendants were found guilty as charged on December 19, 2003. Lindsey was sentenced on January 21, 2004 to life imprisonment plus five consecutive years. He filed a motion for new trial on February 5, 2004, which was amended on January 9, 2006, and denied on March 7, 2007. A notice of appeal was filed on March 23, 2007. The case was docketed in this Court on April 27, 2007, and oral argument was heard on July 16, 2007.

Lindsey was incarcerated pending the outcome of the Barnes prosecution, he plotted with co-defendants Lawton and Charles Hankerson to kill Taylor.

Hankerson testified that Lindsey "came to me and said that Mr. Taylor had snitched on them in the [Barnes] case, and that he wanted to get somebody to knock off Mr. Taylor." In an attempt to insulate himself from the crime, Lindsey gave Hankerson the murder weapon with instructions to pass it along to Lawton. Hankerson was present when Lawton approached Taylor at the Citgo store and shot him repeatedly in the head. Hankerson also confirmed that Lindsey gave Lawton $500 plus one ounce of crack cocaine as payment for the shooting.

In addition to the testimony of co-indictee Hankerson, an inmate housed in the Richmond County Jail on unrelated charges testified that he overheard Lawton tell another inmate that Lindsey had paid Lawton to kill Taylor, and that they had concealed the murder weapon in a place where it would never be found.[2]

1. The evidence was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Lindsey was guilty of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Lindsey testified in his own defense at trial. When asked on direct examination whether he had ever been convicted of a felony, he responded that he had not. Defense counsel then inquired whether Lindsey had been convicted of any crimes of violence. Lindsey replied, "no sir. I'm not violent." On cross-examination, the prosecutor attempted to question Lindsey about his criminal history. Defense counsel objected on the ground that the inquiry constituted improper character evidence.

Outside the presence of the jury, the prosecutor argued that Lindsey opened the door to cross-examination about his misdemeanor arrest history by testifying that he was not violent, and by his counsel's remark in opening statement that Lindsey had never previously been in trouble.[3] Lindsey further objected on the ground that his arrest record constituted improper impeachment evidence. The trial court overruled the objections allowing the State to offer evidence to rebut the claim (asserted either by defense counsel in opening statement or by Lindsey on direct testimony), that Lindsey

---

[2] The weapon, indeed, had not been located.

[3] Opening statements were not transcribed and counsel disagree as to the nature of defense counsel's comments – the prosecutor submits that counsel said his client had never been in trouble before; defense counsel claims he said that Lindsey had never been convicted of a felony. On motion for new trial, Lindsey moved, pursuant to OCGA § 5-6-41, to have the record supplemented with opening statements; however, the trial court denied the request.

had never been in trouble before. Defense counsel moved for mistrial. Cross-examination resumed and the prosecutor questioned Lindsey about two dozen separate misdemeanor arrests spanning the previous seven years. No documentation was offered to substantiate the arrests and no limiting instructions were given to the jury. The prosecutor then asked Lindsey whether his arrest record is "consistent with someone who's never been in trouble before." Lindsey acknowledged that he, in fact, had been arrested on many occasions.

"The general character of the parties and especially their conduct in other transactions are irrelevant matter unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." OCGA § 24-2-2. Under the version of OCGA § 24-9-20 (b) applicable to Lindsey's trial,[4] "no evidence of general bad character or prior convictions shall be admissible unless and until the defendant shall have first put his character in issue." See also *Harris v. State*, 279 Ga. 522 (5) (615 SE2d 532) (2005) (State is authorized to present evidence of prior convictions when a defendant makes his good character an issue at trial). "A defendant makes [his] good character an issue by offering testimony of a witness as to the defendant's general good reputation in the community, or by testifying to [his] own general good reputation or to specific acts of past good conduct." Id. at 526. But "a defendant does not put his 'character in issue' within the meaning of OCGA § 24-9-20 (b) by inadvertent statements regarding his own good conduct." *Jones v. State*, 257 Ga. 753, 758 (1) (363 SE2d 529) (1988). Only where a defendant "makes an election to place his good character in issue may the State offer evidence of the defendant's general bad character or his prior convictions under the authority of OCGA § 24-9-20 (b)." Id.

Here, there was no intentional election on Lindsey's part to place his character in evidence — his testimony on direct was that he had never been convicted of a felony or any crimes of violence. His remark that he is not a violent person is at best an inadvertent statement of his good character.[5] It follows that evidence of Lindsey's prior arrests cannot come in under OCGA § 24-9-20 (b).

Where a defendant has not placed his character in evidence within the meaning of OCGA § 24-9-20 (b), but testifies and "falsely

---

[4] OCGA § 24-9-20 (b) was amended as part of the Criminal Justice Act of 2005, Ga. L. 2005, p. 20, § 1 et seq., effective July 1, 2005. Section 17 of the Act provides that it "shall apply to all trials which commence on or after July 1, 2005." Since Lindsey's trial took place in 2003, the pre-2005 version of OCGA § 24-9-20 (b) is applicable here.

[5] We will not consider defense counsel's purported remarks in opening statement as injecting character or as a basis to impeach Lindsey. First, there is no record of any such statement, but even if there were, it is axiomatic that opening statement is not evidence and has no probative value. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Third Ed., § 1.30.10. The jury in this case was so instructed.

denies past criminal conduct . . . the State may introduce evidence reflecting negatively on the defendant's character only insofar as that evidence proves the falsity of specific testimony of the defendant." (Punctuation omitted.) *Porter v. State*, 254 Ga. 388, 389 (2) (330 SE2d 94) (1985). In that situation, the State is permitted to rebut statements of a defendant who testifies falsely at trial by disproving the facts testified to. But the law is clear that where "a defendant testifies he has no prior *convictions*, his testimony is not subject to rebuttal by proof of prior *arrests*." *Jones*, supra at 759 (1) (a). See also *McGuire v. State*, 238 Ga. 247 (232 SE2d 243) (1977) (testimony of no prior convictions does not open door to cross-examination about prior arrests); *Whitley v. State*, 188 Ga. 177 (5) (3 SE2d 588) (1939) (mere indictment, charge, arrest, or a trial and acquittal are not legal methods of impeachment); *Harris*, supra at 537 (where defendant testifies she had no felony convictions, it was error to allow the State to impeach with evidence of misdemeanor convictions).

Here, Lindsey did not testify untruthfully about his criminal record and he did not testify that he had no prior arrests. Compare *Walker v. State*, 260 Ga. App. 241 (581 SE2d 295) (2003) and *Williams v. State*, 171 Ga. App. 927 (321 SE2d 423) (1984). Accordingly, introduction of evidence of his arrest record was not a proper method of impeachment. See *McGuire*, supra; *Jones*, supra; *Whitley*, supra; *King v. State*, 194 Ga. App. 770 (1) (391 SE2d 769) (1990) (defendant's status as an arrestee is inadmissible for general impeachment purposes). It follows that the trial court erred in allowing the State to question Lindsey about his misdemeanor arrests.

The question remains as to whether reversible error occurred. The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict. *Johnson v. State*, 238 Ga. 59 (230 SE2d 869) (1976). "If the error is relevant to the issues in dispute, not cumulative of other evidence, not beneficial to the defendant and uncorrected by the trial court, then there is perhaps no reason for saying it is harmless, but it may nevertheless be harmless in the context of the entire case." Id. at 61. Lindsey's arrest history was pervasive and breathtaking in scope, and was admitted without any limiting instruction. Thus, the jury was allowed to infer that Lindsey was a person of bad character and that he had the propensity to commit the charged crimes based on nothing more than unproven allegations. "[C]onsidering the gravity and prejudicial character of the error, we cannot say that it is highly probable that the error did not contribute to the jury's verdict." Id. at 61-62.

3. The investigating officer was asked on direct examination by the State about the facts surrounding the shooting of Rosa Barnes. Lindsey's counsel objected on the ground that he had been given no

notice of the State's intent to offer evidence of independent crimes, as required by Uniform Superior Court Rule 31.3. The court overruled the objection and instructed the jury that the evidence may be considered for the limited purpose of establishing motive. The investigator was then questioned extensively about the details of the Barnes shooting over Lindsey's objections as to the scope of the examination.

It is well established that "[o]n the trial of one charged with murder, evidence of the defendant's motive for the homicide is always relevant." *Boone v. State*, 145 Ga. 37, 39 (1) (88 SE 558) (1916). See also OCGA § 24-2-1 (evidence is relevant and, therefore, admissible if it bears on a material issue in the case); *Wall v. State*, 153 Ga. 309 (1) (112 SE 142) (1922) (evidence tending to show motive is always relevant and admissible). The facts surrounding the shooting of Rosa Barnes and Taylor's participation in the trial against Lindsey are relevant and admissible to establish Lindsey's motive in arranging Taylor's murder. Contrary to Lindsey's assertion, the doctrine of collateral estoppel does not bar evidence of motive from being admitted in this case. "[T]he doctrine of collateral estoppel only operates to preclude the relitigation of issues that have been previously resolved between the same parties." (Emphasis omitted.) *Gardner v. State*, 273 Ga. 809, 810 (2) (546 SE2d 490) (2001). See also *Salcedo v. State*, 258 Ga. 870 (376 SE2d 360) (1989). It applies "only after examining whether certain facts were resolved in the defendant's favor at a prior trial." (Emphasis omitted.) *Gardner*, supra at 810. Clearly, the two murder prosecutions involve different victims and litigation of dissimilar issues. It follows that the evidence of motive was properly admitted.[6]

4. Lindsey asserts that the trial court erred in overruling his hearsay objection to certain testimony by the assistant district attorney who prosecuted Lindsey in the Barnes case. The ADA testified for the State that Taylor's name first came up during the Barnes trial when defense counsel suggested Taylor's involvement in the crime. Taylor was known to the victim's family who put out the word that the ADA wanted to speak with him. As a result, Taylor voluntarily appeared at the ADA's office.

At the present trial, the ADA was asked whether Taylor had provided any information about hostilities between Taylor and Lindsey. Lindsey objected on hearsay grounds. The court overruled the

---

[6] We note, however, for purposes of retrial that the scope of the evidence should have been limited to establish Lindsey's motive for Taylor's murder. The minute details of the Barnes murder investigation are unnecessary and are irrelevant to the issues on trial.

objection, finding that the declarant was unavailable, and the statement was reliable and admissible under the necessity exception. Specifically, the ADA was permitted to testify: "[Taylor] told me in short that by coming to testify, we were saving him [Taylor] three bullets."

Citing *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), Lindsey claims that because Taylor's hearsay statement to the ADA was testimonial in nature and he was unavailable to testify, the trial court erroneously admitted the statement in violation of his Sixth Amendment right to confront and cross-examine an adverse witness. Although the *Crawford* decision was rendered after Lindsey's trial concluded, his case is still in the "pipeline" on direct appeal; thus, *Crawford* applies retroactively. *Gay v. State*, 279 Ga. 180, 182, n. 2 (611 SE2d 31) (2005).

A statement is testimonial if it is made with "[t]he involvement of government officers in production of testimonial evidence." *Crawford*, supra at 53 (III) (A). Testimonial statements under *Crawford* include statements made by witnesses to government officers investigating a crime. *Jenkins v. State*, 278 Ga. 598 (2) (604 SE2d 789) (2004). See also *Brawner v. State*, 278 Ga. 316 (2) (602 SE2d 612) (2004) (statement to investigating police officers by an eyewitness inadmissible where witness is absent from trial and defendant had no prior opportunity to cross-examine the witness); *Bell v. State*, 278 Ga. 69 (3) (597 SE2d 350) (2004) (murder victim's statements to police officers investigating previous complaints against defendant were "testimonial in nature" and should not have been admitted at trial); *Moody v. State*, 277 Ga. 676, 680 (4), n. 6 (594 SE2d 350) (2004) (a testimonial statement includes statements made by witnesses during a field investigation by police officers). Thus, Taylor's statement to the ADA, an officer of the State, was testimonial in nature; and since Taylor was unavailable, admission of the hearsay statement violated *Crawford*.

5. Lindsey's remaining enumerations of error were either decided adversely to his position in *Lawton v. State*, supra, or need not be addressed because they are unlikely to recur on retrial.

*Judgment reversed. All the Justices concur.*

DECIDED SEPTEMBER 24, 2007.

*Mark A. Yurachek, Bruce S. Harvey*, for appellant.
*Daniel J. Craig*, District Attorney, *Madonna M. Little*, Assistant District Attorney, *Thurbert E. Baker*, Attorney General, *Benjamin H. Pierman*, Assistant Attorney General, for appellee.