## S13A0571. GOODMAN v. THE STATE.

(742 SE2d 719)

HINES, Justice.

Lori Ann Goodman appeals her convictions and sentences for malice murder and theft by taking in connection with the death of Debra Dressler. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that Goodman, Dressler, and Rose Richardson became acquainted in a homeless shelter in Virginia. The home of Dressler's husband was near, and Dressler wanted to collect her dentures and a checkbook from there, so the three women drove there in Dressler's car. An argument ensued at the husband's home and "Mr. Dressler was killed."[2]

The three women fled in Dressler's vehicle; they acquired beer and crack cocaine. They traveled south, and during the journey, Richardson and Goodman became aggravated by Dressler's behavior; at one point, Dressler was to have sex with a truck driver in exchange for money, but came back from the truck driver's vehicle with only hamburgers from a fast food restaurant. At a motel in South Carolina, Goodman said to Richardson: "we need to get rid of her." Goodman and Richardson recognized that if they merely left Dressler somewhere, she could connect them to the killing of Dressler's husband, and Dressler told them she would do that if left. Goodman and Richardson resolved to kill Dressler by poisoning her with prescription pills, aspirin, and alcohol; they agreed to work in concert on the theory that neither could then implicate the other. Richardson placed pills in Goodman's hand, who put them in a large bottle

---

[1] The crimes occurred on November 27, 2005. On March 6, 2006, a Morgan County grand jury indicted Goodman and Rose Mary Richardson for malice murder, felony murder while in the commission of aggravated assault, and theft by taking. Goodman was tried alone before a jury July 12-14, 2006, and found guilty of all charges. On July 14, 2006, she was sentenced to life in prison for malice murder, and a consecutive term of ten years in prison for theft by taking; the felony murder conviction was vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993). Goodman moved for a new trial on July 17, 2006; the motion was denied on October 18, 2011. On November 15, 2011, Goodman filed a notice of appeal, and the appeal was docketed in this Court for the January 2012 term; Goodman filed a motion in this Court to allow the withdrawal of her appeal, without prejudice, and the motion was granted on March 29, 2012. On April 25, 2012, Goodman filed in the trial court a motion for permission to file an amended motion for new trial, which was granted by consent order on May 11, 2012. Goodman filed an amended motion for new trial on May 31, 2012, and amended the motion again on October 31, 2012; the trial court denied the motion for new trial, as amended, on November 8, 2012. Goodman filed her notice of appeal on November 19, 2012; the appeal was docketed in this Court for the January 2013 term, and argued on March 5, 2013.

[2] Richardson testified to this fact, but declined to testify about specifics as to what occurred during the killing of Dressler's husband. Nonetheless, she also testified that she "can't really say that me and Ms. Goodman necessarily had anything to do with that murder."

containing a cocktail and gave it to Dressler, who drank it. As Richardson drove along an interstate highway, Goodman repeatedly queried why Dressler had not fallen asleep. In Morgan County, Georgia, Richardson exited the highway and drove the vehicle next to a dumpster. Richardson and Goodman looked at each other, and Goodman, seated behind Dressler, removed her belt and began to choke Dressler with it; Richardson tried to put a ball of yarn over Dressler's mouth and nose and then put a pillow over Dressler's face. Dressler struggled and inquired why Goodman and Richardson were doing this; Richardson told her that she was "no good to us." After some minutes, the two women became tired and stopped; they could not determine if Dressler still lived. After resting, Goodman again choked Dressler, this time with a bandana, and Richardson again placed a pillow over Dressler's face. Richardson removed Dressler from the car, and Goodman retrieved a pair of 24-inch bolt cutters from the trunk; Goodman struck Dressler three times on the head with the bolt cutters, and Richardson took them and did the same. Goodman covered Dressler with a blanket, and the two women drove away in Dressler's car. Goodman and Richardson were apprehended in Louisiana.

Richardson pled guilty to voluntary manslaughter and testified at Goodman's trial. Forensic evidence showed that Dressler died of ligature strangulation.

1. The evidence authorized the jury to find Goodman guilty beyond a reasonable doubt of the crimes for which she was convicted. *Jackson v. Virginia,* 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. At the time of trial, the Morgan County courthouse was under renovation, so Goodman's trial could not be held there; it was held at the former Morgan County Senior Center. OCGA § 15-6-18, as in effect at the time of trial, and specifically OCGA § 15-6-18 (c) (1),[3] required essentially two things for a criminal trial in a county the size

---

[3] Then OCGA § 15-6-18 read:

(a) If for any cause it shall or may be impracticable to hold any session or sitting of any superior or state court at the courthouse or other place provided by law therefor, it shall be lawful to hold court and any session or sitting thereof at such place as the proper authorities of the county in and for which the court is to be held may from time to time provide for such purpose, provided that except as provided in subsection (b) of this Code section no session or sitting of any superior court may be held under this subsection at any place other than the county site of the county of such court.

(b) The provisions of this subsection shall apply only in a county in which there exists a state court with one or more courtrooms regularly utilized by the state court outside the county site. In any such county any session of superior court may be held outside the county site in a courtroom of the state court, subject to the following conditions and limitations:

of Morgan County to be held in a location other than the county courthouse: provision for such a location by the proper governing authority of the county, and the consent of the accused. It is uncontroverted that the Morgan County Board of Commissioners properly designated the former Morgan County Senior Center as a place in which the superior court could conduct trials, but at no time did the

---

(1) The senior judge or chief judge of superior court (such terms meaning the active judge who is senior in time of service) must enter a written order for such session of superior court to be so held outside the county site, and such order must incorporate a written finding that it is impracticable for the session of court to be held at the county site;

(2) A judge of the state court must enter a written order consenting for such session of superior court to be held in the courtroom of the state court;

(3) The holding of superior court sessions shall not affect the place of filing of documents to be filed with the superior court, except for documents filed in open court which may be filed where the session of court is held; and

(4) Any state court making courtroom space available to the superior court under this subsection shall be authorized under the same rules to hold sessions of state court in facilities of the superior court.

(c) Notwithstanding the provisions of subsections (a) and (b) of this Code section:

(1) In each county of this state having a population of not more than 50,000 according to the United States decennial census of 1990 or any future such census, if for any cause it shall or may be impractical to hold any session or sitting of any superior or state court at the courthouse or other place provided by law therefor or if it should appear to the governing authority of the county that the best interest of the public would be served by the furnishing of alternate or additional facilities for the holding of any session or sitting of any superior or state court, it shall be lawful to hold court and any session or sitting thereof at such place or places as the governing authority of the county in and for which the court is to be held may from time to time, by appropriate resolution, provide for such purpose, provided that no session or sitting of any superior court or state court may be held under this subsection at any place that is not open to and accessible by the public; provided, further, that no criminal jury trial shall be conducted in such alternate or additional facility without the consent of the accused; and

(2) In each county of this state where the county site is located in an unincorporated area of the county and the governing authority of such county determines by appropriate resolution that the best interest of the citizens of such county would be served by the construction of a courthouse annex or satellite courthouse outside the county site, it shall be lawful to hold any session or sitting of superior or state court or grand jury and to conduct all other related business of the courts at such annex or satellite courthouse.

(d) All acts of a superior court or state court done at a place provided therefor by the county authorities, other than at the county courthouse or other place of holding such court as fixed by law, shall have the same force and effect as if the same had been done at the regular courthouse or other place fixed by law for the holding of such court, including the satisfaction of the requirements of Code Section 15-6-17.

trial court, or the parties, address any question of Goodman's consent to conducting the trial in the designated location.

Holding the trial at a location other than the county courthouse without Goodman's consent violated then OCGA § 15-6-18 (c) (1). *Purvis v. State*, 288 Ga. 865, 869-870 (2) (708 SE2d 283) (2011). The mere absence of objection is insufficient to show proper compliance with then OCGA § 15-6-18 (c) (1); "an accused's consent to having his or her criminal jury trial conducted in an alternate or additional facility must be established by the record." Id. at 870, n. 9. Although it was error to conduct the trial without securing Goodman's consent, that alone does not require reversal of the judgment below. "In order to have reversible error, there must be harm as well as error. [Cit.]" *Inman v. State*, 281 Ga. 67, 73 (5) (635 SE2d 125) (2006). And, Goodman fails to allege harm, or attempt to support a finding of such by evidence. Accordingly, the failure to comply with then OCGA § 15-6-18 (c) (1) does not constitute reversible error. This Court's opinion in *Purvis*, supra, does not require a different conclusion. In Division 1 of that opinion, this Court determined that the defendant's right to a public trial had been violated, and the decision of the Court of Appeals was therefore reversed with the direction that the case be remanded to the trial court for a new trial. Id. at 865-869 (1). Thus, *Purvis* addressed the additional issue of the application of then OCGA § 15-6-18 (c) (1) because the opinion of the Court of Appeals was in error on that point, and the error could recur on retrial. Id. at 869-870 (2). See *CSX Transp., Inc. v. Smith*, 289 Ga. 903, 907 (2) (717 SE2d 209) (2011). However, this posture meant that *Purvis* did not need to address the implication of the found error under then OCGA § 15-6-18 (c) (1), and thus *Purvis* made no pronouncement about the applicability of harmless error analysis to such an error.

3. A police detective from Virginia testified regarding the murder of Dressler's husband, and the State elicited testimony that Dressler, Richardson, and Goodman were suspected of having committed that crime. Goodman argues that this introduced evidence of a connected transaction without compliance with the notice and hearing require-ments of Uniform Superior Court Rules ("USCR") 31.1 and 31.3. First, Goodman did not make any objection on such grounds at trial, and has waived review of the failure to comply with USCR 31.1 and 31.3. *Anderson v. State*, 286 Ga. 57, 58 (3) (685 SE2d 716) (2009).

Second, even though the notice requirements of USCR 31.1 and 31.3 were not met,

> [i]t is well established that "[o]n the trial of one charged with murder, evidence of the defendant's motive for the homicide is always relevant." *Boone v. State*, 145 Ga. 37, 39 (1) (88 SE

558) (1916). See also OCGA § 24-2-1 (evidence is relevant and, therefore, admissible if it bears on a material issue in the case); *Wall v. State*, 153 Ga. 309 (1) (112 SE 142) (1922) (evidence tending to show motive is always relevant and admissible).

*Lindsey v. State*, 282 Ga. 447, 451 (3) (651 SE2d 66) (2007). The State asserted that the independent crime against Dressler's husband, and Goodman's fear of being held culpable for it, provided her motive for killing Dressler. See *Young v. State*, 281 Ga. 750, 751-752 (642 SE2d 806) (2007). "As the evidence complained of was evidence of [Goodman]'s motive, notice and a hearing under USCR 31.1 and 31.3 were not necessary." *Cummings v. State*, 273 Ga. 547, 548 (2) (544 SE2d 429) (2001). Nor does the fact that Goodman was characterized as a "suspect" render the evidence inadmissible. " 'Evidence of the defendant's motive is relevant, even though it may incidentally place the defendant's character in evidence. . . .' [Cit.]" *Fulton v. State*, 278 Ga. 58, 60 (3) (597 SE2d 396) (2004).

Goodman also notes that the State was allowed to ask Richardson whether she had "made statements in the past" regarding Goodman's involvement in the murder of Dressler's husband. Goodman objected and, after discussion, the court instructed the jury on the law regarding similar or connected offenses and transactions; the original question was never answered. Although Goodman asserts that the question itself created a negative impression in the jury's eyes regarding her character, Goodman did not request that the jury be instructed to disregard the question.[4] And, evidence about Goodman's involvement in the murder of Dressler's husband was relevant in her trial for the murder of Dressler. *Lindsey*, supra; *Young*, supra; *Fulton*, supra.

4. Crosby, a crime scene specialist with the Georgia Bureau of Investigation, testified that DNA from yarn found on Dressler's body matched Dressler, but that no other match was made. Goodman now contends it was error to allow such evidence as Crosby had not been qualified as an expert witness in this area and testified as to matters outside his knowledge. However, no such objections were raised below, and Goodman has waived review of this asserted error. See *Wesley v. State*, 286 Ga. 355, 355-356 (1) (689 SE2d 280) (2010); *Boring v. State*, 303 Ga. App. 576, 579 (1) (694 SE2d 157) (2010).

---

[4] Goodman does not show that Richardson had not, in fact, made statements implicating Goodman in the prior crime.

5. Goodman contends that Richardson was improperly allowed to testify regarding Goodman's exercise of her right to a jury trial, and to comment on the ultimate issue of guilt, when Richardson said that Goodman should "admit her guilt" and accept the consequences, as Richardson testified she had done. Goodman did not raise any objection at trial, and therefore cannot raise the issue on appeal. *Huntley v. State*, 271 Ga. 227, 230 (5) (518 SE2d 890) (1999).

6. Fowler, who shared a jail cell with Goodman after her arrest, testified that Goodman told her that: while in the car, Goodman choked Dressler from behind, with Richardson's assistance; hit Dressler over the head with the bolt cutters; and left her body where it was later found. Fowler also testified that, although Goodman told her this is what occurred, Goodman also said that she needed to concoct a different version of events to avoid the consequences of the murder, and that Goodman resolved to claim that: when Dressler's husband was killed, Goodman did not enter the house; when Dressler was killed, Goodman was under the influence of drugs and alcohol, and was traumatized; and that Goodman had merely done what Richardson told her to do. Fowler also testified that, one night, Goodman cried out as though having a nightmare, and then laughed; Goodman told Fowler that she was not, in fact, having a nightmare, but faking one, and wanted to put it "on the record" that she was having nightmares in the aftermath of the killings.

Goodman contends that Fowler was improperly allowed to testify as to the ultimate issue and relate to the jury what the "truth" was. To the extent that this enumeration of error was preserved for appellate review, Fowler recounted which version of events Goodman herself said was the truth, the jury would have properly understood that context, see *Wesley*, supra at 356 (3) (c), and it was not improper for Fowler to repeat Goodman's characterization. See *McCoy v. State*, 273 Ga. 568, 571 (6) (544 SE2d 709) (2001).

7. Dressler's daughter testified that Dressler had a brain aneurism and surgery in 2001 that changed her personality and made her gullible and forgetful. Although Goodman contends this evidence was irrelevant and presented only to elicit the jury's sympathy for the victim, the evidence was relevant to Goodman's motive, namely that, in part due to Dressler's mental capacity, Goodman feared that Dressler might implicate her in the murder of Dressler's husband. See *Lindsey*, supra; *Young*, supra; *Fulton*, supra.

8. Goodman asserts that, during closing argument, the prosecutor made comments reflecting his personal belief in the credibility of

certain witnesses.[5] See *Mason v. State*, 274 Ga. 79, 80 (2) (b) (548 SE2d 298) (2001). However, Goodman did not object and has waived appellate review of any improper argument. *Scott v. State*, 290 Ga. 883, 885 (2) (725 SE2d 305) (2012).

9. Finally, Goodman contends that her trial counsel failed to provide effective representation in several respects. In order to prevail on this claim, she must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to her defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, she must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, she must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of her trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).[6]

(a) Goodman contends that trial counsel should have objected to the State's failure to comply with USCR 31.1 and 31.3. See Division 3, supra. However, as noted above, the evidence of which she complains was nonetheless admissible. Id.

(b) During the hearing on the motion for new trial, in response to Goodman's questioning, trial counsel agreed that he had not objected

---

[5] During closing argument, counsel for Goodman argued that although Fowler and another witness who met Goodman in jail testified that Goodman told them facts consistent with Richardson's testimony, they did so by virtue of some agreement with Richardson. During the State's closing argument, the prosecutor said: "I do believe Ms. Richardson. Every law enforcement officer in this case believes Ms. Richardson. And, based on the evidence, you should believe Ms. Richardson." And, in discussing Fowler's testimony during argument, the prosecutor also said: "And — and think about it. Every detail Ms. Fowler, who, I think, as I saw your faces, is very, very believable. [Sic] It just amazes me how anybody can believe that that is any type of conspiracy. Just think about the details that each one told you. Each one specific main details of how the crimes were committed in Virginia and here in Morgan County. [Sic]"

[6] In her brief, Goodman contends that trial counsel was ineffective for failing to object "to the specific instances of error set out above . . . ." However, Goodman does not address the appellate standard for establishing ineffective assistance of counsel as to all instances underlying the enumerations of error that appear in her brief, and those not addressed are deemed abandoned. See Supreme Court Rule 22.

to the testimony of Crosby. See Division 4, supra. However, counsel also testified that Crosby's testimony to which he could have objected was that there was no DNA evidence found at the scene that matched that of Goodman, and thus Crosby's testimony did not harm her. Accordingly, Goodman fails to satisfy either prong of *Strickland* as to this assertion.

(c) Trial counsel raised no objection when Richardson said that Goodman should "admit her guilt," see Division 5, supra, and during the hearing on the motion for new trial, counsel agreed that this was so. However, Goodman "never asked defense counsel to explain why he did not object. Thus, [s]he failed to overcome the strong presumption that the inaction was a strategic decision." *Nichols v. State*, 281 Ga. 483, 486 (2) (c) (640 SE2d 40) (2007). See also *Sanders v. State*, 283 Ga. 372, 374 (2) (a) (659 SE2d 376) (2008). Further, that Goodman was guilty of murdering Dressler was the substance of Richardson's testimony, and it is unlikely that the statement that she should admit it added any prejudicial import to that testimony, thus Goodman fails to show that the result of her trial would have been different had counsel raised an objection. *Felton v. State*, 283 Ga. 242, 246-247 (2) (d) (657 SE2d 850) (2008). See also *Davis v. State*, 285 Ga. 343, 345-346 (4) (676 SE2d 215) (2009).

(d) Goodman also elicited counsel's agreement that he had not objected when Fowler referred to one of Goodman's versions of events as the "truth." See Division 6, supra. Although Goodman did not specifically ask counsel why he did not object, see *Nichols*, supra, counsel's response made it clear that he recognized that Fowler's repetition of Goodman's characterization of what was the "truth" would be admissible. See Division 6, supra.

(e) At trial, during cross-examination of a detective regarding the various statements Richardson gave to investigators, Goodman's counsel asked whether Richardson initially denied having anything to do with Dressler's death, which elicited an affirmative response. Counsel then asked: "And then — Ms. Goodman never pointed the finger at Ms. Richardson at all, did she?" The witness responded that Goodman made no statement "about that," and counsel asked: "In fact, she didn't give you a statement at all, is that correct?" This also elicited an affirmative response. On redirect examination, the State asked: "You attempted to interview her. . . . And she refused to give you a statement." Again, the witness replied affirmatively.

During the hearing on the motion for new trial, counsel testified that he wanted to highlight Richardson's behavior of giving multiple versions of events in an effort to point "fingers at everyone else except herself," and juxtapose that with Goodman's behavior, in an effort to support the defense theory that Richardson was the true culprit and

Goodman was simply "along for the ride." Counsel also testified that he was not trying to highlight Goodman's silence, and that it was only inadvertent that he "opened the door" to the State's question. In light of the evidence which counsel had to meet, we cannot say that counsel's effort to have the jury compare Goodman's culpability with Richardson's was unreasonable. " '[A]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel. [Cit.]' " *Robinson v. State*, 278 Ga. 31, 37 (3) (d) (597 SE2d 386) (2004).

(f) Counsel did not object when the State made clearly improper statements during closing argument. See Division 8, supra. During the hearing on the motion for new trial, he was asked whether that was "just an oversight," and responded: "It's hard to say. I don't want to offer an explanation because I don't remember it at all." But, even assuming that Goodman has met her burden to show deficient performance, she fails to show that counsel's failure to object to the argument prejudiced her such that raising an objection would have produced a different result. The jury was instructed that the credibility of witnesses was for the jury to decide and, before closing arguments, the court instructed the jury that counsels' arguments were not evidence. See *Long v. State*, 287 Ga. 886, 891 (4) (700 SE2d 399) (2010). Accordingly, we conclude that there is no reasonable probability that the result of the trial would have been different had counsel interposed an objection. Id.

*Judgments affirmed. All the Justices concur, except Hunstein, C. J., who concurs in part and dissents in part.*

HUNSTEIN, Chief Justice, concurring in part and dissenting in part.

While I agree that the trial court erred in conducting Goodman's trial at a facility other than the county courthouse, I dissent because the majority improperly places the burden on the defendant to show that she was harmed by the State's failure to obtain her consent. At the time of Goodman's trial, state law required the consent of the accused before a criminal jury trial could occur in a facility other than the courthouse. See Ga. L. 1998, p. 1159, § 2 (current version at OCGA § 15-6-18 (c) (1) (2012)). In a previous case, we determined that the consent must be established by the record, rejecting the argument that "the mere absence of any objection by the accused to proceedings conducted in such alternate or additional facilities is sufficient to show compliance" with the statute. *Purvis v. State*, 288 Ga. 865, 870, n. 9 (708 SE2d 283) (2011). Here, neither the trial court nor the prosecutor obtained the consent of Goodman to conduct her trial at the former Morgan County Senior Center. Because the State

did not comply with the plain language of the statute requiring Goodman's consent, I dissent to Division 2.

DECIDED MAY 6, 2013 —
RECONSIDERATION DENIED JUNE 3, 2013.

*John W. Donnelly*, for appellant.
*Fredric D. Bright, District Attorney, Alison T. Burleson, Assistant District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Clint C. Malcolm, Assistant Attorney General*, for appellee.