## S11A1416. RIDLEY v. THE STATE.
(725 SE2d 223)

MELTON, Justice.

Following a jury trial, Sherman Ridley was convicted of malice murder, felony murder predicated on aggravated sodomy, felony murder predicated on aggravated assault, and aggravated sodomy, all with regard to the murder of Lorraine Lansford.[1] On appeal, Ridley contends, among other things, that the trial court erred by: (1) improperly commenting on the evidence; (2) allowing Ridley's custodial statements into evidence; (3) letting the State direct Ridley to reenact the circumstances of two similar transactions; and (4) giving an improper jury charge. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record

---

[1] On December 28, 2004, Ridley was indicted for malice murder, felony murder predicated on aggravated sodomy, felony murder predicated on aggravated assault, and aggravated sodomy relating to the murder of Lansford on October 4, 1994. Ridley's first trial ended in a mistrial. Following a second jury trial beginning on April 18, 2006, Ridley was found guilty on all charges, and he was sentenced to life imprisonment for malice murder. The felony murder convictions were vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the conviction for aggravated sodomy was merged with the malice murder conviction. On May 1, 2006, Ridley filed a motion for new trial, which was amended by new counsel on June 21, 2010, and denied by the trial court on February 22, 2011. Ridley subsequently filed a timely notice of appeal, and his case was thereafter docketed to the September 2011 term of this Court and submitted for decision on the briefs.

shows that Lansford was strangled to death on October 4, 1994 in an abandoned building near the Techwood area of Atlanta. Lansford's face and head had bruises, her face had numerous lacerations, her nose was broken, and her body had bite marks on it. The autopsy also showed that Lansford likely died while being anally penetrated. Jerry Perry and Diane Humphrey found Lansford's body, but neither Perry nor Humphrey contacted the police. Instead, they directed others to contact the police, who showed up at the scene, secured it, and began collecting evidence. Perry talked to the police the next day and admitted that he paid to have protected sex with Lansford days before her death. He told police about the nature of his relationship with Lansford and gave samples of blood and hair. Perry later admitted that he actually paid Lansford for sex on the day of her murder, October 4, 1994. Police discounted Perry as a suspect because he had no criminal history of sex crimes.

Police also investigated Ridley in 1994 because two prostitutes had accused him of rape during the same time period and because Lansford was a prostitute. On November 21, 1994, police questioned Ridley about the alleged rape of S. D. on November 18, 1994. During the questioning, Ridley stated, "You take me on to jail." Police then asked Ridley to listen to them, and he replied, "I don't want to — no — no nothing." Police continued to question Ridley. Subsequently, in the same line of questioning, Ridley admitted to raping S. D., but said he did not have sex with Lansford. Ridley was arrested and later pled guilty to rape and aggravated assault in connection with S. D. and C. S., another prostitute. In both rapes, Ridley beat the women in the face, flipped them onto their stomachs, and raped them from behind. The injuries to Lansford indicated a similar scenario.

Despite their investigation, police did not arrest Ridley in connection with Lansford's death in 1994. Detective Vincent Velazquez began investigating Lansford's murder as a "cold case" in 2003. Due to the similarity of the crimes against S. D. and C. S., Ridley again became a suspect. Velazquez sent the physical evidence from Lansford's body cavities for laboratory analysis. In addition to Ridley's DNA, the lab results showed DNA from another male and from another female. Velazquez submitted the results to the GBI to be cross-referenced with the sex offender database. The cross-reference positively identified the DNA from Lansford's anus as Ridley's. During questioning on December 16, 2004, Ridley again denied having sex with Lansford. Police arrested Ridley for the malice murder of Lansford in 2004. Later, Ridley admitted that he had sex with Lansford, but he denied killing her.

This evidence was sufficient to enable the jury to find Ridley guilty of the crimes for which he was convicted beyond a reasonable

doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Ridley argues the trial court improperly stated an opinion on the testimony given by a dentist he called as an expert witness. The record shows that, in order to identify a set of bite marks located on Lansford's breast, the State called an expert in forensic odontology to the stand. In order to challenge the forensic odontologist's testimony that Ridley could have caused the bite mark, Ridley called a dentist who had no expertise in forensic odontology. After extended questioning which revealed that Ridley's dental expert had no experience in identifying bite marks like the ones left on Lansford, Ridley attempted to elicit testimony regarding the dental impressions an individual could leave by covering his teeth with his lips while biting into fruit. The trial judge, sua sponte, stopped the testimony and stated, "I think he's speculating. He doesn't know." The judge then explained to Ridley's counsel, "He's an expert — what he's talking about now is not something he's an expert in any more than any of us are." Ridley contends that this was an improper comment on the evidence.

The trial court in this case exercised its judgment and discretion by stopping the testimony and explaining his ruling to Ridley's counsel. See *Redd v. State*, 240 Ga. 753 (2) (243 SE2d 16) (1978). A trial judge may not express his opinion about a proven or unproven issue relevant to the guilt of the defendant. OCGA § 17-8-57. Under OCGA § 17-8-57, however, a trial judge may explain the reasons for an evidentiary ruling to the parties. *Linson v. State*, 287 Ga. 881 (2) (700 SE2d 394) (2010). See also *Paslay v. State*, 285 Ga. 616 (680 SE2d 853) (2009) (OCGA § 17-8-57 not generally applicable to colloquies between judge and counsel regarding admissibility of evidence). Here, the trial court was merely explaining the basis for an evidentiary ruling. There was no error.

3. Ridley argues that the trial court erred by limiting his cross-examination of Detective Green regarding the extent of Perry's prior criminal record, including a murder for which Perry had been a suspect, but was never indicted or tried. The record shows that, during direct examination by the State, Detective Green was asked why he determined that Perry was not a viable suspect for the murder of Lansford. Detective Green responded that Perry had no sex crimes in his criminal record, and, for that reason, among others, he did not believe that Perry murdered Lansford. On cross-examination, Ridley wished to ask Detective Green about a robbery and an unrelated murder. Ridley, however, had no proof of Perry's conviction of robbery such as a certified copy of a conviction, and it is undisputed that Perry was never indicted or convicted of the

unrelated murder. Moreover,

> a defendant is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried. However, the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature.

(Citations omitted.) *Klinect v. State*, 269 Ga. 570, 573 (3) (501 SE2d 810) (1998).[2] The crimes about which Ridley sought to ask do not meet these criteria. The trial court did not err in excluding this evidence.

4. Ridley next argues that the trial court should not have admitted into evidence custodial statements made by him while he was being investigated in 1994 regarding the rape of S. D. Ridley argues he asserted his right to remain silent prior to his admission. The record, however, does not support this contention. As detectives prepared to take Ridley to jail in 1994, the following colloquy took place:

> Ridley: I'm upset because I'm getting locked up. You take me on to jail.
> Detective: No, just listen to me.
> Ridley: I don't want to — no — no nothing. Take me on to jail.
> Detective: We have a certain way we had to do it, okay? Do you mind if I just go ahead and do my job?
> Ridley: Yeah.
> Detective: Why?
> Ridley: Because you can take me on to jail.
> Detective: Well, we will.
> Ridley: And let me try to doggone try to talk to somebody about this — all this mess I'm in.
> Detective: Well, that's what we are talking about now, but I'm going to tell you right now yelling ain't going to make it, okay? The easiest thing would be — would be just to chill — . . .

---

[2] Prior to trial, the trial court granted, in part, the State's motion in limine to exclude evidence of any unrelated crimes committed by Perry.

Detectives then changed the audiotape and continued talking with Ridley. Subsequently, Ridley admitted raping S. D. on November 18, 1994 and stated he did not have sex with Lansford. At trial Ridley admitted to having had sex with Lansford, and the State impeached him based on his 1994 denial.

An arrested person has the constitutional right to remain silent, but he must clearly assert his desire to remain silent to exercise that right. *Berghuis v. Thompkins*, ___ U. S. ___ (III) (A) (130 SC 2250, 176 LE2d 1098) (2010). Police must honor an arrested person's right to remain silent if the person clearly and unambiguously states that he wants to end questioning. *Green v. State*, 275 Ga. 569 (2) (570 SE2d 207) (2002); *State v. Moon*, 285 Ga. 55 (673 SE2d 255) (2009). But if a defendant equivocates in asserting the right, a police officer is under no obligation to clarify or to stop questioning. *Perez v. State*, 283 Ga. 196 (657 SE2d 846) (2008). Here, at no point did Ridley unequivocally state that he wanted to remain silent or wanted to speak with an attorney before speaking further with police. Accordingly, the trial court properly admitted the statement in question.

5. Ridley contends that the trial court erred by allowing the State to ask him to physically reenact the manner in which he overpowered S. D. and C. S. when he raped them. Ridley, however, on the prior advice of his counsel, refused to reenact the similar transactions. Therefore, no reenactment evidence was ever submitted. Moreover, Ridley's counsel did not object, at any time, to the State's request. Errors not raised by counsel at trial will not be heard on appeal. *Quintanilla v. State*, 273 Ga. 20 (2) (537 SE2d 352) (2000). This enumeration is without merit.

6. Ridley maintains that the trial court erred by allowing the State to question him regarding a prior domestic dispute with his wife, contending that the evidence had not been previously determined to be a similar transaction. The record shows, however, that the evidence was admitted to impeach Ridley's testimony on direct that he did not beat women with whom he argued. In this connection, OCGA § 24-9-20 (b) provides:

> If a defendant in a criminal case wishes to testify and announces in open court his or her intention to do so, the defendant may so testify in his or her own behalf. If a defendant testifies, he or she shall be sworn as any other witness and may be examined and cross-examined as any other witness. . . .

Therefore, to impeach Ridley's statement as if he were any other witness, the trial court properly allowed the State to confront Ridley with evidence that he beat his wife after an argument, in addition to

the similar transaction evidence regarding S. D. and C. S. Upon questioning, Ridley admitted that he had been arrested based on a domestic disturbance charge and gave full details of the incident. There was no error.

7. Ridley contends that the trial court erred by allowing the State to impeach him with a prior inconsistent statement without first laying a proper foundation. The record shows that, during his testimony, Ridley contended that he had not denied having sex with Lansford in 1994. The prosecutor then began reading Ridley's 1994 statement to police to him. At that time, Ridley's counsel objected, arguing that it would be more appropriate to refresh Ridley's recollection first. In response, the trial court instructed the State to appropriately narrow its line of questioning, the State agreed to do so, the State stopped reading the transcript, and Ridley made no further objections. Ridley, therefore, acquiesced in the trial court's ruling, which, in any event, appeared to sustain Ridley's objection. *Compton v. State*, 281 Ga. 45 (2) (635 SE2d 766) (2006) (acquiescence deprives a defendant of the right to complain on appeal).

8. Ridley argues that the trial court erred by allowing the State to improperly cross-examine him about his testimony regarding the circumstances of the similar transaction rapes of S. D. and C. S., contending that this evidence was irrelevant to the murder for which he was being tried. The record shows that, on direct examination, Ridley testified regarding the circumstances of the similar transactions involving S. D. and C. S. On cross-examination, the State began questioning Ridley about the transactions and the extent of the beatings associated with them. After Ridley stated that he pled guilty to the crimes against S. D. and C. S. because he believed he might "do better" when he got out of jail, the State asked Ridley if he understood that both victims could identify him. At that point, Ridley objected and asked the trial court, "Can we get back to the facts of our case?" The trial court overruled this objection to relevance, and allowed the State to continue its cross-examination. As the State's questioning was relevant to Ridley's own direct testimony concerning the similar transactions, which, in turn, were relevant to Ridley's bent of mind and course of conduct, the trial court did not err in overruling the relevancy objection. "[T]he trial court has wide discretion in determining relevancy and materiality, and furthermore, where the relevancy or competency is doubtful, it should be admitted, and its weight left to the determination of the jury." (Citation omitted.) *Owens v. State*, 248 Ga. 629, 630 (284 SE2d 408) (1981). There was no abuse of discretion in this case. To the extent that Ridley wishes to argue that the objection should have been sustained based on reasons he did not raise at trial, his arguments are waived. See *Walker v. State*, 282 Ga. 703 (4) (653 SE2d 468) (2007).

9. Ridley contends that the trial court erred in its charge to the jury in a litany of ways. While these contentions are generally without merit when one properly considers the charge as a whole (see, e.g., *Lewis v. McDougal*, 276 Ga. 861, 864 (2) (583 SE2d 859) (2003)), we will specifically address a few of Ridley's main arguments.

(a) Ridley contends that the trial court erred by failing to give a charge regarding DNA testing. The record reveals, however, that Ridley never requested any such charges. Furthermore, the DNA evidence in question was used to show that Ridley had sex with Lansford at some time prior to her death, a fact which Ridley admitted. Under these circumstances, Ridley's argument that the jury had no ability to properly consider the DNA testimony absent an instruction lacks merit.

(b) Ridley argues that the trial court gave an improper charge regarding a defendant's credibility. The record shows, however, that this charge was requested by Ridley. Therefore, even if improper, any error was induced by Ridley and does not provide a basis for reversal here. *Jones v. State*, 287 Ga. 770 (4) (700 SE2d 350) (2010).

10. Tracking the numerous alleged errors listed above, Ridley also argues that his trial counsel was ineffective. For example, Ridley argues that his trial counsel failed to adequately research jury charges, properly prepare and call witnesses, and timely object to improper impeachment and bad character evidence at trial. In order to succeed on his claim, Ridley must show both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In this regard, he must show that "but for counsel's alleged unprofessional errors, the result of the proceeding would have been different." (Citations omitted.) *Miller v. State*, 285 Ga. 285 (676 SE2d 173) (2009).

As shown above, the great majority of the alleged improprieties on which Ridley bases his ineffective assistance claims were not, in fact, errors at all. Moreover, to the extent that any of Ridley's remaining claims of ineffective assistance were arguably based on potential errors, Ridley has not shown that any such alleged errors ultimately prejudiced his defense. See generally, e.g., *Smith v. State*, 288 Ga. 348 (8) (703 SE2d 629) (2010). For these reasons, the trial court properly denied Ridley's claim that he received ineffective assistance of counsel.

*Judgment affirmed. All the Justices concur.*

DECIDED MARCH 5, 2012 —
RECONSIDERATION DENIED APRIL 11, 2012.

*John W. Kraus*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Marc A. Mallon, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.