In the Supreme Court of Georgia

Decided:   March 7, 2016

S15A1626.  FORD v. THE STATE.

BENHAM, Justice.

Appellant Marcus Ford appeals his convictions stemming from the shooting deaths of Paul Gaines ("Paul") and Michael Gaines ("Michael"), as well as the aggravated assaults of Isaac Walker ("Walker") and Antwan Clark ("Clark").[1]   We affirm in part and vacate in part.

---

[1]The crimes occurred on October 13, 2007.  On February 22, 2008, a Fulton County grand jury indicted appellant on two counts of malice murder, two counts of felony murder predicated on aggravated assault, two counts of felony murder predicated on possession of a firearm by a convicted felon, two counts of aggravated assault with a deadly weapon, one count of aggravated assault (Isaac Walker), one count of aggravated assault (Antwan Clark), one count of possession of a firearm during the commission of a felony, and one count of possession of a firearm by a convicted felon. The case was tried before a jury on September 28, 2009, to October 1, 2009, and the jury returned verdicts of guilt on all charges.  The trial court sentenced appellant to two consecutive life sentences on the two counts of malice murder, twenty years to be served concurrently for each of the four counts of aggravated assault, and five years to be served concurrently for possession of a firearm by a convicted felon.  The trial court issued a five-year suspended sentence for the count of possession of a firearm during the commission of a crime.  The felony murder convictions were vacated as a matter of law.  Appellant filed a motion for new trial on October 6, 2009, and amended the motion on March 20, 2013, October 21, 2013, and October 28, 2013.  The trial court held a hearing on the motion for new trial, as amended, and denied the motion on February 18, 2015.  On April 16, 2015, appellant applied for and was granted an out-of-time appeal and he filed a notice of appeal that same day.  Upon receipt of the record, the case was docketed to the September 2015 Term of this Court and the case submitted for a decision to be made on the briefs.

1. Appellant alleges the evidence was insufficient to convict. The record, viewed in a light most favorable to upholding the verdicts, shows that Paul, Walker and Clark sold crack cocaine from their apartment in East Point, Georgia. Walker testified that Paul taught appellant how to cook powder cocaine so as to turn it into crack cocaine. Paul believed that appellant was using Benjamin Hickey, who was a neighborhood man going by the nickname of "Pee Wee," to intercept and divert Paul's crack customers to appellant.[2] On the night in question, Paul, Michael, Walker, and Clark drove to appellant's house to confront him about diverting Paul's drug customers.[3] Paul exited the vehicle, approached appellant, who was on the porch of his house, and the two began to argue while the other three men looked on from inside the car. Appellant brandished a gun at Paul, causing the other three men to exit the vehicle and to plead with Paul to leave. As Michael reached for Paul's arm to urge him to leave, appellant opened fire. Michael went down immediately, but Paul was able to run. Appellant chased after Paul, continuing to shoot at him

[2]According to witness testimony, the act of diverting another drug dealer's customers is known in the drug trade as "shortstopping."

[3]Clark testified that Paul was in charge of their drug-dealing operation.

2

until he fell.  Upon appellant's further threats of shooting them, Walker and Clark fled on foot.  Appellant left the scene in his vehicle and stopped to throw the gun away in a river.  Appellant eventually turned himself in to authorities.

At trial, appellant testified that Paul had a gun and shot at him first, at which point he retrieved a gun and shot back.  Walker and Clark testified that none in their group, including Paul, was armed with a gun.  Clark testified appellant was armed with  a black "baby" Glock handgun.  Police did not recover any guns from or near the decedents' bodies or from inside the vehicle which had been abandoned during the shooting.  All six shell casings found at the scene were in one general location near where witnesses said appellant was standing during the shooting.  The ballistics expert testified that the six shell casings were fired from the same gun and were consistent with being fired from a .40 caliber Glock gun.  Appellant's wife testified that, three years prior to the shooting, she bought two Glock guns, one of which she kept under a sofa located on a porch outside appellant's house.  Although the Glocks she purchased were 9 millimeter weapons, appellant's wife also testified that she purchased .40 caliber ammunition for the gun kept under the sofa.  The ballistics expert also testified the two bullets recovered from Paul's body and the single

3

bullet recovered from Michael's body were fired from the same gun and were consistent with being fired from a .40 caliber Glock semiautomatic pistol. The medical examiner testified that Paul suffered six gunshot wounds and died from a fatal wound to the chest. Michael was shot in the back and the bullet traversed his spine and disrupted a large blood vessel to the heart, mortally wounding him. The parties stipulated that appellant was a convicted felon.

The evidence adduced at trial and summarized above was sufficient to authorize a rational trier of fact to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. Jackson v. Virginia, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979). The jury was free to reject evidence submitted by appellant that he acted in self-defense. White v. State, 287 Ga. 713 (1) (b) (699 SE2d 291) (2010). Accordingly, this allegation of error cannot be sustained.

We note, however, that the trial court made a sentencing error when it sentenced appellant for the aggravated assaults of Paul and Michael. Those two aggravated assaults should have merged as a matter of fact into the convictions for malice murder. See Hulett v. State, 296 Ga. 49 (2) (a) (766 SE2d 1) (2014).

Accordingly, the concurrent sentences of 20 years for each of the aggravated assaults of Paul and Michael must be vacated.[4]

2. Appellant alleges the prosecutor engaged in misconduct by making misleading comments in his opening statements, by pursuing a theory that appellant was a drug dealer, by making certain comments during closing argument, and by improperly cross-examining Benjamin "Pee Wee" Hickey. Our review of the record shows, however, appellant never made an objection concerning prosecutorial misconduct at any point during the proceedings, including during the State's opening and closing and its cross-examination of Hickey, and never asked the trial court to rebuke the prosecutor for any alleged misconduct. "The contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct." (Citation an internal quotations omitted.) Sanders v. State, 289 Ga. 655 (2) (715 SE2d 124) (2011). In the absence of any objection regarding prosecutorial misconduct, these allegations of error are not properly before this Court for review. See Doyle v. State, 291 Ga. 729 (2) (733 SE2d 290) (2012); Duvall v.

---

[4]The 20-year concurrent sentences for the aggravated assaults of Walker and Clark remain intact.

5

State, 290 Ga. 475 (2) (a) (722 SE2d 62) (2012); Shealey v. State, 257 Ga. 437 (3) (360 SE2d 266) (1987).

3. Appellant alleges that the trial court erred when it did not grant his motion for mistrial at the close of the State's case-in-chief. Whether to grant a mistrial is a matter of the trial court's discretion. Jackson v. State, 292 Ga. 685 (4) (740 SE2d 609) (2013). The trial court's ruling denying a motion for mistrial will not be disturbed unless there is a showing that a mistrial is essential to the preservation of the right to a fair trial. Id. at 689.

As basis for his motion for mistrial, appellant complained that the State had not called Hickey to testify and therefore failed to establish, as indicated by the prosecutor's opening statement, that appellant was a drug dealer. The State, however, was not required to call Hickey as a witness.[5] Walker, who was a State witness, testified that Paul taught appellant how to make crack cocaine; and Clark, who was also a State witness, testified that appellant was diverting Paul's drug customers. When authorities searched appellant's home, they found a living room without any furniture, a camera trained directly on the front door which was a common set-up for drug houses, and a large amount of cash. The

---

[5] Hickey did, however, give testimony during the defense's presentation of evidence.

6

State also provided evidence that appellant's home was the subject of a previous law enforcement inquiry into alleged drug activity. A jury could reasonably infer based on this evidence that appellant was involved in the drug trade without hearing from Hickey during the State's case-in-chief. We cannot say the trial court abused its discretion when it declined to grant appellant's motion for a mistrial.

4. Appellant complains the trial court erred when it overruled appellant's objection to the prosecutor's calling Hickey a liar during closing argument. During his closing argument, the prosecutor stated that he did not call Hickey to testify because he was not going to suborn perjury.[6] At that point, appellant objected on the grounds that the comment was improper and was essentially bolstering, but the trial court overruled the objection. "The State has broad latitude to demonstrate, as part of its closing argument, that which is authorized

---

[6]The prosecutor's comments were as follows:
[Defense counsel] makes a big deal about us not calling Mr. Hickey.... And you will see this later, in a minute, but I'm not going to suborn perjury.

(Defense Counsel makes objection.)

If I talk to a witness and they tell me one thing one day, and they talk to someone and then I come back and talk to them and they tell me something else, that tells me that they are liars. And I'm not going to, I cannot, I'm not going to suborn perjury.

(Defense Counsel makes objection.)

7

by the evidence." Crawford v. State, 297 Ga. 680 (2) (777 SE2d 463) (2015). The trial court has the discretion to determine the proper scope of closing argument. See Alexander v. State, 285 Ga. 9 (2) (673 SE2d 208) (2009).

Here the record shows that during the defense's presentation of evidence, Hickey testified on direct-examination that appellant did not sell drugs and he denied telling authorities that appellant sold drugs. On cross-examination, however, he admitted telling authorities that he was "a crack connoisseur." He also admitted that on the night of the shooting, Paul had confronted him and told him, "What you doing, man? Don't come around my area no more." It was also clear from cross-examination that some of Hickey's testimony on direct, in particular testimony about whether appellant sold drugs, was different from the pre-trial statements Hickey allegedly made to the prosecutor and the State's investigator. Thus, although the prosecutor should have avoided personalizing the argument, his comments in closing as to his reasons for not calling Hickey to testify during the State's case in chief or as to the reliability of Hickey's testimony, which were in response to defense counsel's argument, were supported by the evidence. Additionally, the trial court instructed the jurors that

statements made by the lawyers did not constitute evidence. The trial court did not commit reversible error when it overruled appellant's objection.

5. When the trial court overruled appellant's objection to the prosecutor's comments described in division 4 herein, it stated as follows: "Well, I overrule your objection. I think this is proper argument based on the evidence and the witnesses." Appellant contends this statement was an improper comment on the evidence in violation of former OCGA § 17-8-57. We disagree. The trial court was merely stating the basis for its ruling which it is permitted to do. See Ridley v. State, 290 Ga. 798 (2) (725 SE2d 223) (2012).

At trial, appellant made an objection that the State was misrepresenting testimony about the weapon used for the shootings. The following colloquy transpired between defense counsel and the trial court:

> Defense Counsel: Objection. There has been no testimony that there has been a second gun in the house. Mischaracterizing and stating facts not in evidence.

> Trial Court: ...I overrule your objection.

> Defense Counsel: Your Honor, there has been no evidence that there were two guns in the house at the time of the shooting.

> Trial Court: **Well, there is evidence that the gun that shot the bullets that killed these people were .40 caliber....**

> Defense Counsel: There has been ...evidence that they [were] shot from the same gun, not that it was a .40 caliber gun. It was a .40 caliber weaponry ammunition.

> Trial Court: Okay. Well, [counsel], you are not giving testimony. It will be up to the jury to determine what the evidence was. And I overrule your objection.

Appellant complains that the highlighted statement by the trial court violated former OCGA § 17-8-57. Again we disagree. The ballistics expert did in fact testify that the three bullets retrieved from decedents' bodies were fired from the same gun and were consistent with being fired from a .40 caliber Glock gun. The trial court was explaining its ruling and never expressed any opinion about the veracity of the evidence itself. In any case, when the colloquy is considered as a whole, it is clear that the trial court was leaving it up to the jury to decide what the evidence did or did not show. This allegation of error is without merit.

6. Appellant alleges that the trial court erred when it denied his Batson[7] challenge concerning Juror 20, who was an African-American male, on the grounds that the State's reasons for striking the juror were race neutral. We review the denial of a Batson motion under a clearly erroneous standard. See

---

[7]Batson v. Kentucky, 476 U.S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

Willis v. State, 287 Ga. 703 (5) (699 SE2d 1) (2010); Johnson v. State, 266 Ga. 775 (4) (470 SE2d 637) (1996). During voir dire, it was revealed that Juror 20 knew defense counsel and attended the same church as defense counsel. The prosecutor stated this was the reason it struck Juror 20. We agree with the trial court that this was a race-neutral reason to strike the juror and that there was no clear error. See Johnson v. State, 266 Ga. at 777.

7. At the State's request and over appellant's objection, the trial court gave an instruction on mutual combat. Appellant complains that this was improper; however, the giving of such a charge would have only benefitted appellant and, thus cannot sustain an allegation of error. See Sanders v. State, 283 Ga. 372 (2) (c) (659 SE2d 376) (2008) ("Because the mutual combat charge authorizes a jury to find the defendant guilty of voluntary manslaughter in lieu of murder, it is a charge that benefits a defendant and, as such, a convicted defendant's complaint that it was improper to give the charge is without merit.")

Appellant also complains about the trial court's charge on felony murder (possession of a firearm by a convicted felon). This allegation of error is moot. Since appellant was convicted and sentenced for malice murder, his convictions for felony murder were vacated as a matter of law and any issues concerning

11

those crimes are moot. See Young v. State, 290 Ga. 392 (7) (721 SE2d 855) (2012).

8. Appellant's final allegations of error concern his assertion that counsel rendered constitutionally ineffective assistance. In order to prevail on a claim of ineffective assistance of counsel, appellant

> must show counsel's performance was deficient and that the deficient performance prejudiced him to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. A strong presumption exists that counsel's conduct falls within the broad range of professional conduct.

(Citation and punctuation omitted.) Pruitt v. State, 282 Ga. 30, 34 (4) (644 SE2d 837 (2007). If a defendant fails to meet his burden on one prong of the two-prong test, then the other prong need not be reviewed by the Court. Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). We address each alleged instance of ineffective assistance below.

a. Appellant contends counsel was ineffective for failing to ask certain jurors follow-up questions about bias during voir dire. The conduct of voir dire "can be a matter of trial strategy" and does not necessarily establish ineffective assistance. Morgan v. State, 276 Ga. 72 (9) (575 SE2d 468) (2003). In this case, appellant has failed to show any deficiency or prejudice.

b. Appellant alleges trial counsel was deficient for failing to call Latoya Dixon as a witness. At trial, appellant planned to call Dixon in order to testify about Paul's alleged violent behavior towards third persons (i.e., <u>Chandler</u>[8] evidence). The State raised a concern and the trial court allowed the State to voir dire Dixon outside the presence of the jury. After the voir dire, there was a break in proceedings. When the parties returned, defense counsel reported that Dixon had broken down and counsel said she would not be requiring Dixon to testify in light of her distress. Pretermitting whether counsel was deficient for not insisting Dixon testify before the jury, appellant cannot show prejudice.

During the proffer, Dixon testified about an occasion during which Walker pulled a gun on her and Paul intervened by walking her away from the situation. Dixon said she did not tell appellant about this incident. During another incident, she said that Paul pointed the same silver gun at appellant and threatened to kill him. She said appellant's reaction to the situation was to laugh in "their face" and "let it go." The trial court ruled that the testimony about Walker pulling a gun on Dixon could not come in because appellant did not

---

[8]<u>Chandler v. State</u>, 261 Ga. 402 (405 SE2d 669) (1991). Although <u>Chandler</u> could be applied in this case, it has been superceded by Georgia's new Evidence Code. See <u>Hendrix v. State</u>, 298 Ga. 60, 62, n. 2 (779 SE2d 322) (2015).

know about the incident.[9]   Appellant's counsel asked about the remaining evidence coming in, but the trial court never ruled because it called for a break in the proceedings and then Dixon had her break down.

While the evidence of Paul's pointing a silver gun at appellant and making a threat to kill appellant[10] may have been relevant, it cannot be said that but for counsel's failure to call this witness, the outcome of the trial would have been different.  See Varner v. State, 285 Ga. 300 (3) (a) (676 SE2d 189) (2009).  No gun was recovered from Paul's body, no shell casings were near Paul's body, no bullets hit appellant or his house, and the two eyewitnesses to the event, Clark and Walker, both testified that they were all unarmed. Appellant's claim of ineffective assistance cannot be sustained.

c. Appellant contends that trial counsel was ineffective when she did not argue or explain voluntary manslaughter/mutual combat to the jury.  At the motion for new trial hearing, counsel explained that her trial strategy was an all or nothing defense predicated on self-defense and, for this reason, she did  not

_____

[9]We note also that the testimony did not constitute Chandler evidence in regard to Paul because Paul did not point the gun at Dixon.

[10]This evidence is also not Chandler evidence.  Depending on when the incident occurred, because it was not entirely clear from the record as to whether it occurred on the same day or on a prior day, it would either be res gestae evidence or prior difficulties evidence.

pursue any alternate defense such as voluntary manslaughter/mutual combat. We cannot say counsel's performance in pursuing an all or nothing strategy was so outside the broad range of professional conduct so as to constitute deficient performance.  See <u>Wells v. State</u>, 295 Ga. 161 (2) (b) (758 SE2d 598) (2014); <u>McKee v. State</u>, 277 Ga. 577 (6) (a) (591 SE2d 814) (2004).  Therefore, appellant's ineffective assistance claim cannot prevail.

<u>Judgment affirmed in part and vacated in part.  All the Justices concur.</u>