301 Ga. 807
FINAL COPY

S17A0709.  STROUD v. THE STATE.

GRANT, Justice.

Appellant Shamell A. Stroud was convicted of murder and related offenses in connection with the 2010 stabbing death of victim Wayne Jackson.  Stroud now appeals, contending that the evidence was insufficient to support his convictions; that the trial court erred in admitting evidence of prior felonies committed by Stroud; and that his trial counsel rendered constitutionally ineffective assistance in failing to object to the prior crimes evidence.  Finding no error, we affirm.[1]

I.

[1] The victim was killed on September 29, 2010.  On December 14, 2010, Stroud was indicted by a Fulton County grand jury for malice murder, felony murder, aggravated assault, and possession of a knife during the commission of a felony.  At the conclusion of a jury trial held November 1-4, 2011, Stroud was found guilty on all counts.  Stroud was sentenced to life imprisonment for the malice murder count and a consecutive five-year term for the knife-possession count; the remaining verdicts merged or were vacated by operation of law.  See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993).  On November 8, 2011, Stroud filed a motion for new trial, which he amended on April 24, 2015.  Following a hearing, the trial court denied the motion for new trial on March 15, 2016.  Stroud filed a timely notice of appeal on March 22, 2016, and the case was docketed in this Court to the April 2017 term and thereafter was submitted for decision on the briefs.

Viewed in the light most favorable to the jury's verdicts, the evidence shows that on the evening of September 29, 2010, Jackson approached Stroud as he sat at a nightclub bar. After talking for some time, the two left together in Jackson's car, stopped at a different club for a short time, and then drove to Jackson's apartment.

At 11:31 p.m., the alarm button at Jackson's apartment was activated. Police arrived to find the front door open and Jackson lying on the floor in a pool of blood next to a bloody kitchen knife. No one else was present in the apartment. There were beer and liquor bottles scattered throughout the apartment, and a male pornographic film was playing in the master bedroom. Blood was observed throughout the apartment, including a large amount in the foyer, more blood drops and stains in the living room and kitchen, and blood spatter on the master bedroom wall and bed. An overturned nightstand, a displaced mattress, and a second knife with its handle missing evidenced a struggle in the bedroom. Jackson had suffered multiple stab wounds to his torso and extremities, including at least one stab wound to the chest, two stab wounds to the back, and various defensive injuries, several which were indicative of efforts to grasp the blade end of a knife. A palm

print from the doorknob of the apartment was later matched to that of Stroud's right palm.

Stroud had fled the scene. He bought a bus ticket to New York but was apprehended during a stop in Norfolk, Virginia, where, following a waiver of his *Miranda*[2] rights, he gave a written statement and submitted to a video-recorded interview. During the interview, Stroud told the investigators that Jackson had falsely told him there was a party at his apartment but that no one else was there when they arrived. Stroud maintained that a friend of Jackson joined them at the apartment; Jackson started taking off his clothes to get "comfortable"; the friend went into the master bedroom, where Jackson had pornography playing on the television; Stroud went in the bedroom; Jackson declared that "this is the party" and began making sexual advances; Stroud became angry; and he and Jackson began to argue and "tussle." Stroud further maintained that he then retreated to the kitchen; Jackson followed, claiming to have a weapon; Jackson "jumped at" Stroud; Stroud grabbed a knife and stabbed Jackson; Jackson went back to his room; and when Jackson re-emerged, Stroud stabbed him again out of fear that Jackson had retrieved a weapon.

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

3

At trial, Stroud testified in his own defense. Though continuing to assert that the stabbing had been committed in self-defense, Stroud's testimony was inconsistent in many respects with his statements to police; among other things, Stroud claimed that Jackson had "basically held him hostage" and attacked him with a knife when Stroud had spurned his advances, and that he believed he was fighting for his life when he wrested the knife from Jackson. He conceded that he had lied to investigators about the presence of a third person in the apartment and attributed the discrepancies in his earlier statements to being "so stressed out" at the time of his interview. Contrary to the evidence from Jackson's autopsy, Stroud testified that he had stabbed Jackson only once in the back and only two times in total. He admitted on cross-examination that he had stepped on Jackson as he lay in the foyer, leaving a footprint on Jackson's body as he fled the apartment. Stroud was also questioned on both direct and cross-examination about past crimes and acknowledged he had been convicted of felony theft on four prior occasions, beginning in 2003.

Contrary to Stroud's contention, the evidence described above was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Stroud was guilty of the crimes of which he was convicted.

*Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). This evidence, which included admissions by Stroud himself, established an ongoing altercation during which Stroud stabbed and cut Jackson numerous times with a knife, after which Stroud fled the apartment and left town without seeking help. Stroud's trial testimony conflicted in various respects with both the medical examiner's findings and Stroud's prior oral and written statements to police. Whether the State disproved Stroud's claim of self-defense beyond a reasonable doubt was a question for the jury, which — particularly given Stroud's inconsistent accounts and admitted false statements — was authorized to disbelieve his self-defense claim. See *Murray v. State*, 295 Ga. 289, 292 (1) (759 SE2d 525) (2014); *Allen v. State*, 290 Ga. 743, 744 (1) (723 SE2d 684) (2012).

## II.

Stroud contends that the trial court erred in admitting evidence of his four felony theft convictions. This evidence — consisting of certified copies of four convictions, two for theft by taking and two for theft by receiving — was introduced during the defense's case-in-chief. Prior to calling the defense's first witness, defense counsel — anticipating that Stroud would elect to testify — sought a ruling regarding the admissibility of evidence of

5

his prior convictions. While arguing that the convictions were more prejudicial than probative, counsel conceded that, if Stroud were to testify, the court "can't keep all the convictions out," and thus urged the court to admit evidence of only "one or two of [them]." The court ruled that, if Stroud were to testify, the two most recent of the prior convictions — both for theft by receiving — would be admissible for impeachment purposes. Defense counsel's reply was, "[a]ll right."

The defense first presented three character witnesses, all of whom testified to Stroud's reputation for "peacefulness." Stroud then took the stand and, on direct examination, acknowledged his two prior theft-by-receiving convictions. Also during his direct examination, when questioned about whether he had attempted to render aid to the victim, Stroud testified that "if I could have stopped the situation, I would have. I'm a good person, I'm not a bad person."

At the conclusion of Stroud's direct examination, the State moved for leave to introduce evidence of the remaining two convictions, on the ground that, by testifying that he was "a good person," Stroud had placed his character in evidence. Defense counsel essentially conceded the issue, responding, "I'm not going to argue that." The trial court ruled that the two

remaining theft-by-taking convictions would be admissible, and the State offered evidence of all four convictions during its cross-examination of Stroud.

Though Stroud now asserts that the trial court erred in admitting the prior convictions evidence, he is precluded from claiming error by virtue of his acquiescence in the admission of this evidence in the trial court.[3] In the initial colloquy on this issue, Stroud's counsel effectively invited the admission of "one or two" of the convictions and affirmatively agreed when the court ruled it would allow evidence of the latter two. Similarly, with regard to the two earlier convictions, when the State reopened the issue following Stroud's testimony on direct examination to being "a good person," defense counsel stated he was "not going to argue." Stroud thus cannot challenge these rulings on appeal. See, e.g., *Adkins v. State*, 301 Ga. 153, 154 (2) (800 SE2d 341) (2017) (despite earlier, overruled objection to certain evidence, defense counsel, by eliciting that evidence at trial, waived right to challenge its admission on appeal); *Stewart v. State*, 286 Ga. 669, 672

---

[3] Because this case was tried before the January 1, 2013 effective date of the new Georgia Evidence Code, see Ga. L. 2011, pp. 99, 214, § 101, "plain error" review under OCGA § 24-1-103 (d) is not available for these claims in any event.

(4) (c) (690 SE2d 811) (2010) (defendant cannot complain on appeal to a ruling in which he acquiesced at trial); *Nance v. State*, 280 Ga. 125, 130-131 (9) (623 SE2d 470) (2005) (counsel's statement that he had no objection to admission of evidence effected a waiver of his right to appeal this issue).

Even assuming these rulings were properly preserved, the trial court did not err in admitting Stroud's prior theft-by-receiving convictions because this evidence was admissible under former OCGA § 24-9-84.1 (a) (2).[4] This Code section provided that, for impeachment purposes, if a defendant chose to testify,

> [e]vidence that the defendant has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment of one year or more under the law under which the defendant was convicted if the court determines that the probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant.

Thus, if the defendant testified, evidence of prior felony convictions was admissible for impeachment purposes upon the trial court's determination that its probative value substantially outweighed its prejudicial effect. See *Childs v. State*, 287 Ga. 488, 492 (3) (696 SE2d 670) (2010). Here, the trial court agreed with the State's contention that, given Stroud's reliance on his

---

[4] The analogous provision under the new Evidence Code is OCGA § 24-6-609 (a) (1).

claim of self-defense and the absence of any eyewitnesses to the fatal altercation, Stroud's credibility was of central importance in the case. Because the crime of theft implicates a perpetrator's honesty, the court did not abuse its discretion in making the initial determination that the two theft-by-receiving convictions — the most recent of the four — were admissible as bearing on Stroud's credibility as a witness. See *Clay v. State*, 290 Ga. 822, 835 (3) (B) (725 SE2d 260) (2012) (enumerating factors to consider in conducting balancing under former OCGA § 24-9-84.1 (a) (2), including impeachment value of prior crime, importance of defendant's testimony, and "centrality of the credibility issue").

Regarding the remaining two convictions, we assume for the sake of argument that Stroud's remark that he was "a good person" did not open the door to the admission of these convictions under former OCGA § 24-9-20 (b).[5]  Compare *Ridley v. State*, 290 Ga. 798, 802-803 (6) (725 SE2d 223) (2012) (defendant's testimony that he did not beat women with whom he argued opened the door to questioning regarding prior act of domestic

---

[5]  At the time of trial, that Code section provided that a defendant who testified "shall be sworn as any other witness and may be examined and cross-examined as any other witness."  The analogous provision under the new Evidence Code is OCGA § 24-5-506 (b).

violence), with *Lindsey v. State*, 282 Ga. 447, 448-449 (2) (651 SE2d 66)

(2007) (defendant's remark on direct examination that "I'm not violent" did

not open the door to evidence of prior arrests under former OCGA § 24-9-20

(b)); *Jones v. State*, 257 Ga. 753, 758 (1) (363 SE2d 529) (1988) (defendant

does not open the door to bad character evidence by inadvertent statements

regarding his own good conduct).[6]  But even if evidence of the additional two

prior convictions was not properly admitted, any error in this regard was

harmless.   See *Lindsey*, 282 Ga. at 450 (2) ("[t]he test for determining

nonconstitutional harmless error is whether it is highly probable that the error

did not contribute to the verdict").  The jury was already aware of Stroud's

two theft-by-receiving convictions, which had occurred more recently in time

than the theft-by-taking convictions, and thus was fully aware of his status as

a recent, repeat felon.  The incremental impact on Stroud's standing in the

jury's eyes introduced by evidence of two additional, less recent convictions

---

[6]

 We note that *Lindsey* and *Jones* were decided under a pre-2005 version of former OCGA § 24-9-20 (b), which was more restrictive regarding impeachment of a criminal defendant's character than the version applicable at the time of Stroud's trial. Compare Ga. L. 2005, pp. 20, 27, § 14 (amended version without such language), with Ga. L. 1973, pp. 292, 294, § 2 (prior version including such language).  See also *Chandler v. State*, 281 Ga. 712, 718 (4) (c) (642 SE2d 646) (2007) (noting that 2005 amendments to Evidence Code expanded the State's ability to impeach testifying defendants).  Because we hold that any error in the admission of the evidence here was harmless, we need not delineate the precise contours of former OCGA § 24-9-20 (b) at the time of Stroud's trial.

for crimes of similar severity makes it highly probable that this evidence did not contribute to the verdict.  See, e.g., *Harris v. State*, 279 Ga. 522, 527 (5) (615 SE2d 532) (2005) (error in admission of prior misdemeanor convictions was harmless).[7]

### III.

Stroud's final contention is that his trial counsel rendered ineffective assistance in failing to challenge the admission of the prior crimes evidence. To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was professionally deficient and that such deficient performance resulted in prejudice to the defendant.  *Strickland v. Washington*, 466 U. S. 668, 695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (3) (689 SE2d 280) (2010).  To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms."  *Romer v. State*, 293 Ga. 339, 344 (3)

---

[7] Because any error in the admission of this evidence was harmless, we need not decide whether these convictions could have been properly referenced in the State's cross-examination of Stroud's character witnesses, as the State did not seek to do so.  See generally Paul S. Milich, Ga. Rules of Evidence § 11:4 (noting rule, under both old and new Evidence Code, that defendant's character witnesses may be cross-examined about their knowledge of a prior conviction if such conviction rebutted the "specific character trait" as to which the witness testified).

(745 SE2d 637) (2013); see also *Strickland*, 466 U. S. at 687-688. To prove prejudice, one must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. *Strickland*, 466 U. S. at 695. If the defendant fails to establish either the "deficient performance" or the "prejudice" prong of the *Strickland* test, this Court is not required to examine the other. *Green v. State*, 291 Ga. 579, 580 (2) (731 SE2d 359) (2012).

With regard to the theft-by-receiving convictions, because we have concluded that there was no error in the court's admission of this evidence, we cannot say that trial counsel performed deficiently in failing to challenge the court's ruling regarding its admissibility. See *Woods v. State*, 271 Ga. 452, 454 (2) (c) (519 SE2d 918) (1999) ("there is no deficient performance when an attorney fails to object to admissible evidence"). With regard to the theft-by-taking convictions, even to the extent they were admitted in error and counsel's failure to object could be adjudged as deficient performance, our finding that any error was harmless is fatal to Stroud's claim of prejudice. See *Mote v. State*, 277 Ga. 429, 432 (4) (588 SE2d 748) (2003) (no prejudice for ineffective assistance purposes, where improper admission of evidence to which counsel had failed to object had been held harmless error). Stroud's

ineffective assistance claim therefore fails along with its substantive companion claims.

Judgment affirmed. All the Justices concur.

Decided August 28, 2017.

Murder. Fulton Superior Court. Before Judge Russell.

Jessica A. Seares, for appellant.

Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Lyndsey H. Rudder, Arthur C. Walton, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.