306 Ga. 607
FINAL COPY

S19A0947.  MACK v. THE STATE.

PETERSON, Justice.

Alvonte Mack appeals his convictions for malice murder and felony possession of a firearm in connection with the 2014 shooting death of Benjamin Webber.[1] Mack argues that the trial court erred by admitting a detective's recorded comments that addressed the ultimate issue in the case and by admitting a third-party's comment to a post on Mack's Facebook page. He also complains that his trial counsel was ineffective (1) in handling the third-party's comment on

---

[1] Mack was indicted by a Chatham County grand jury on September 16, 2015, for malice murder, two counts of aggravated assault, felony murder predicated on aggravated assault, two counts of possession of a firearm during the commission of a felony, and aggravated battery. At a trial held in July 2016, the jury found Mack guilty on all counts, except the jury did not enter a verdict on felony murder. Mack was sentenced to serve life in prison for malice murder and five years to run consecutively for one count of possession of a firearm during the commission of a felony. The remaining counts were either merged or vacated by operation of law. Mack filed a timely motion for new trial on July 25, 2016, and amended it through new counsel on December 1, 2017. On February 1, 2019, after a hearing, the trial court denied the motion. Mack timely filed his notice of appeal. His appeal was docketed to this Court's April 2019 term and was submitted for a decision on the briefs.

the Facebook post, (2) in handling testimony relating to the accidental nature of the shooting, and (3) for failing to object to the State's closing argument. We affirm because the trial court did not err in admitting the detective's testimony, the admission of the third-party comment was harmless, and to the extent that trial counsel's performance may have been deficient, it was not prejudicial.

Viewed in the light most favorable to the verdicts, the evidence at trial shows that on September 29, 2014, Mack posted on his Facebook page a picture of an individual in handcuffs overlaid with the text, "If I got arrested what would you think I did? Share and see what your friends say!" The following day, another Facebook user named Stanley Harley commented on the post, "Blow a muthaf****'s doom off they shoulders."

Two days after Harley's comment, on October 2, 2014, Mack posted to his Instagram account a photo of himself pointing a gun at the camera. He included the caption: "I SWARE TO GOD I WANNA COOK ME A F*** N**** TODAY IDK WHITCH 1 BUT IK IMA

2

COOK 1 OF YALL B**** N****S TODAY #FTG #FTO #H$MG #HAWTHORNESTREETMURDERGANG."

After school later that same day, outside of a residence on Hawthorne Street in Chatham County, Mack was with Benjamin Webber, Dominique Bryant, and Mack's cousin. Mack and Webber had been friends, but they often fought, sometimes physically, and Webber was dating someone in whom Mack was interested. Mack pulled a gun out of his pocket and told the group he was going to "cook somebody today." At some point, Mack pointed the firearm at Webber, took the clip out, showed off the bullets, put the clip back in, and racked the slide, at which point a bullet fell from the gun to the ground. Mack picked up the bullet, reloaded the gun, and shot Webber in the neck.

Mack fled the scene. Several hours later, Mack showed another group of people his gun, informing them that he had just pointed "the laser in a boy's face" and shot him. He also told the group that he was looking for a stolen vehicle in which to leave town. Two days later, Mack posted to his Facebook page a screenshot of a news story

indicating that he was being sought by law enforcement in connection with the shooting. Mack surrendered to authorities the following day.

Webber was transported to a hospital, where he died ten months later as a result of the bullet having severed his spinal cord. The medical examiner testified that the bullet passed into Webber's spinal cord at a level trajectory.

1. Although Mack does not challenge the sufficiency of the evidence, we have independently reviewed the record and conclude that the evidence presented at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that he was guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

2. Mack argues that the trial court erred in failing to redact the comments made by a detective during a video interview of Bryant, because the comments touched on the ultimate issue in the case: whether the shooting was an accident. We disagree.

4

Mack did not testify at his July 2016 trial. His counsel acknowledged that Mack shot Webber but claimed that the shooting was unintentional. Testifying as a witness for the State, Bryant indicated that Mack was only "playing" with the gun when it went off accidentally. To counter this aspect of Bryant's testimony, the State sought — through the testimony of Detective Alan Sammons — to introduce a video of Sammons's interview of Bryant in which, the State argued, Bryant described the incident differently. During the interview, Bryant told law enforcement that Mack's gun fired as he was racking the slide, holding the gun sideways and close to his chest. The defense unsuccessfully sought redaction of a portion of the video in which Sammons told Bryant, "See, I look at this and I can't think of any need to be pointing a gun . . . at Ben. He shot him in the face and at five feet away or six feet away. [Gesturing] That's how I would shoot you in the face, not like this. Not like that. Not like this. I shoot you in the face."

This case is governed by the new Evidence Code, so OCGA § 24-7-704 governs the admission of opinion testimony of both lay and

5

expert witnesses. In the case of lay witness testimony, "an opinion or inference otherwise admissible shall not be objectionable because it embraces an ultimate issue[.]" OCGA § 24-7-704 (a); see also *Grier v. State*, 305 Ga. 882, 886 (2) (a) (828 SE2d 304) (2019) ("And even though [the witnesses'] opinion about who killed the victims addressed an ultimate issue in the case, that alone does not make the testimony objectionable." (citation and punctuation omitted)); *Thompson v. State*, 304 Ga. 146, 153 (9) (816 SE2d 646) (2018) (a detective's opinion testimony indicating she believed appellant to be the shooter "did not violate the ultimate issue rule in the new Evidence Code"); cf. OCGA § 24-7-704 (b) (prohibiting expert testimony on certain "ultimate issues" reserved "for the trier of fact alone"). Rule 704 (a) is materially identical to Federal Rule of Evidence 704 (a), so "we look to federal case law," particularly that of the Eleventh Circuit pre-2013. *State v. Almanza*, 304 Ga. 553, 556 (2) (820 SE2d 1) (2018). The federal case law is equally unequivocal: "[Federal Rule 704 (a)] has abolished the prohibition on [lay] opinion testimony concerning the ultimate issue in a case." *Carter v.*

*DecisionOne Corp.*, 122 F3d 997, 1005 (11th Cir. 1997) (punctuation omitted); see also *United States v. Dulcio*, 441 F3d 1269, 1274 (11th Cir. 2006) (explaining that because agents testified as lay witnesses, their testimony did not invoke Rule 704 (b) because it only applies to expert testimony, and "Rule 704 (a) expressly allows opinion testimony by non-expert witnesses").

Detective Sammons was a lay witness, and Rule 704 (a) does not bar the admission of his comments even if they touched on the ultimate issue in the case. The trial court did not err in refusing to redact them from the interview.

3. Mack argues that the trial court erred in admitting State's Exhibit 61 — Stanley Harley's comment on Mack's September 29, 2014 Facebook post — because it was hearsay and improper character evidence. We conclude that, even if erroneous, the admission of the comment was harmless.

A non-constitutional error is harmless if it is "highly probable that the error did not contribute to the verdict." *Lindsey v. State*, 282 Ga. 447, 450 (2) (651 SE2d 66) (2007), superseded on other grounds

7

by statute as stated in *Stroud v. State*, 301 Ga. 807 (804 SE2d 418) (2017). Even if the error admits improper evidence relevant to the case that is neither cumulative of other evidence nor beneficial to the defense and goes uncorrected by the trial court, "it may nevertheless be harmless in the context of the entire case." Id. (citation and punctuation omitted). In determining whether the error was harmless, we "weigh the evidence as we would expect reasonable jurors to have done[.]" *Boothe v. State*, 293 Ga. 285, 289 (2) (b) (745 SE2d 594) (2013).

On the day of the shooting, Mack posted on Instagram a photo of himself holding a gun with a caption of him swearing to kill someone. This properly admitted evidence reflected far more negatively on Mack's character than a comment on a post days earlier written not by Mack but by a third party whose relationship to and knowledge of Mack, if any, is unknown. Mack shot and killed Webber on Hawthorne Street in front of two witnesses after removing the clip, showing off the bullets, putting the clip back in the gun, pointing the gun at Webber, racking the slide, dropping a

bullet, picking it up, and reloading the gun. Mack then fled the scene and bragged to others that he had pointed "the laser in a boy's face" and shot him. In the light of this evidence, the admission of Harley's comment was harmless; even if it was in error, there is not a reasonable probability that it contributed to the verdict. See *Humphrey v. State*, 281 Ga. 596, 599-600 (3) (642 SE2d 23) (2007) (admission of hearsay not an error in the light of overwhelming evidence of guilt); *Bridges v. State*, 268 Ga. 700, 708 (6) (492 SE2d 877) (1997) (same).

4. Mack argues that his trial counsel was ineffective for failing to preserve all of his objections to State's Exhibit 61, in handling Bryant's testimony, and for failing to object to the prosecutor's closing argument. We disagree.

To prevail on a claim of ineffective assistance of counsel, Mack must show both that his trial counsel's performance was deficient and that this deficiency prejudiced his defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). "To establish deficient performance, an appellant must overcome the

9

strong presumption that his . . . counsel's conduct falls within the broad range of reasonable professional conduct and show that his counsel performed in an objectively unreasonable way" in light of all of the circumstances. *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015) (citation and punctuation omitted). To establish prejudice, an appellant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U. S. at 694. An appellant must prove both prongs of the *Strickland* test, and if he fails to prove one prong, "it is not incumbent upon this Court to examine the other prong." *Smith*, 296 Ga. at 733 (2) (citation and punctuation omitted). In reviewing either component of the inquiry, all factual findings by the trial court will be affirmed unless clearly erroneous. Id.

(a) Mack argues that trial counsel was ineffective for failing to object to State's Exhibit 61 as impermissible character evidence. As explained above in Division 3, even assuming trial counsel was deficient in failing to raise the objection, weighing the evidence

against the much greater evidence of guilt, Mack has failed to show that but for the admission of the Facebook comment the result of the trial would have been different.

(b) Mack argues that trial counsel was ineffective for conceding the State's motion in limine that sought to prevent the defense from eliciting lay testimony that the shooting was accidental. This argument is not supported by the record.

Trial counsel never conceded the State's motion in limine. When the State first moved to exclude lay testimony that the shooting was accidental, trial counsel initially said, "I don't know that I disagree with that," but argued that the trial court should preclude the State from asking its own questions about intentionality. When the State refused to concede that, trial counsel said, "I believe we should be able to ask the question, do you believe he intentionally shot him based on what they observed[.]" When the trial court suggested a standing order prohibiting the parties from inquiring about intent or accident, trial counsel again disagreed and said, "I think I should be allowed to ask based on what they saw.

11

And their opinion is that the Defendant was intentionally pointing a firearm at somebody or was this just a result of reckless behavior." Despite trial counsel's objections, the trial court issued the standing order that inquiries about intent or accident were "off limits" "unless the landscape changes" and a party raises the issue again with the court. Trial counsel was not deficient for doing at trial exactly what Mack now says he should have done.

(c) Mack argues that trial counsel was ineffective for failing to press Bryant when he volunteered that the shooting was indeed an accident, opening the door to that line of questioning. This argument also is not supported by the record.

Contrary to Mack's argument, trial counsel did follow up on Bryant's testimony on direct examination that Mack was only "playing" with the gun when Webber was shot. On direct examination, Bryant testified that Mack was "playing with [the gun], like just looking at it and stuff like that," that Webber was "already in front of [Mack]" when they were talking, and that the "gun just accidentally went off when [Webber] was in front of

12

[Mack]." On cross-examination, trial counsel explicitly and repeatedly followed up on this testimony, asking: "by your testimony, he was playing with the gun, is that correct?" "[d]id you ever see him intentionally point at anyone?" "[y]ou say he was not looking at Ben when the gun was fired, is that correct?" "according to your testimony, he was playing with the gun and the gun fired, is that correct?" "[h]e played with the gun for a period of time, is that correct?" and "[b]ut it's your testimony that he pulled the gun, he played with it and the gun fired, is that correct?" These questions all elicited answers favorable to Mack. Again, trial counsel was not deficient for doing at trial exactly what Mack now says he should have done.

(d) Mack argues that his trial counsel was ineffective for failing to object to the prosecutor's closing argument, which mentioned the trial court's options in sentencing. But trial counsel did object.

During closing arguments, Mack's counsel asked the jury to convict Mack of only involuntary manslaughter. The prosecutor's response in closing included the following:

13

And [trial counsel] brought this up when we talk about these [lessers] and moving up the chain, you're only concerned with guilt or innocence, you're not to concern yourself with punishment. That's because some people might not see — see the involuntary and say, you know, this deserves a lot more than these [lessers], you know, reckless conduct misdemeanors. And some people might see the malice and say, but he doesn't deserve to be punished for that, he doesn't deserve a sentence for that. The [lessers], the middle of felony murder, and you don't have to worry about punishment. All of those things that we just talked about, those concerns on both ends, the Judge will take them into consideration and return a sentence that is appropriate based on those considerations. The Judge will do that, that's what she does.

Immediately after the prosecutor finished his closing argument, trial counsel objected to the State's implication that felony murder carries a lesser sentence, and he requested an instruction that the jury is not to concern itself with punishment and that malice murder and felony murder have the same punishment. The judge overruled the objection and stated that the standard charge that "they are not to consider punishment should resolve the issue." Once more, trial counsel was not deficient for doing at trial exactly what Mack now says he should have done.

To the extent that Mack complains that his trial counsel did not raise the right objection — that he should have also objected to the implication that the judge would resolve any sentencing issues, diminishing the consequences of the verdicts in the mind of the jurors — he has failed to show prejudice. In the light of the overwhelming evidence of Mack's guilt, and the fact that the jury found him guilty of malice — not felony — murder, Mack has failed to demonstrate how raising a somewhat different objection would have changed the outcome of the trial. See *Humphrey v. Riley*, 291 Ga. 534, 544-545 (II) (K) (731 SE2d 740) (2012).

But let there be no misunderstanding: if the prosecutor's statements did imply that the punishment for felony murder was less than for malice murder, they would have been plainly inappropriate. See OCGA § 16-5-1. On this cold record, we cannot easily determine whether that is the best interpretation, and resolving Mack's claims does not require us to decide the question. We simply remind the State of its responsibility to avoid such arguments in future cases.

*Judgment affirmed. All the Justices concur.*

DECIDED AUGUST 19, 2019.

Murder. Chatham Superior Court. Before Judge Freesemann.

*Robert L. Persse*, for appellant.

*Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew D. O'Brien, Assistant Attorney General*, for appellee.